*925 OPINION
By the Court,
Rose, J.:
In Braunstein v. State,[1] this court modified the rules of evidence concerning the admissibility of prior bad act evidence in prosecutions of sex crimes. The primary issue in this appeal concerns whether this rule should apply to criminal convictions arising from trials held prior to our decision in Braunstein, and not yet resolved on direct appeal.
We hold that Braunstein is to be applied to all criminal cases arising from trials held prior to that decision and not yet resolved on direct appeal, provided the issue has been preserved for appeal. Following a Braunstein analysis, we reverse Richmond’s conviction and remand for a new trial.

FACTS

Procedural history

The action below arises from the prosecution of Randy *926 Richmond for sexual misconduct with a minor referred to in this opinion as A.B. The State charged Richmond with four counts of lewdness with a child under the age of fourteen and one count of open or gross lewdness, all five counts involving A.B. The State sought to jointly try Richmond on an additional count of lewdness involving another child, A.R. The district court conducted a Petrocelli[2] hearing and concluded that A.B.’s allegations were not proved by clear and convincing evidence, and thus were not admissible with regard to A.R.’s allegations. Accordingly, the district court ordered separate trials, with A.B.’s allegations to be tried first. The district court, however, ruled that A.R.’s testimony would be admissible in a trial of A.B.’s allegations, finding that clear and convincing evidence supported A.R.’s allegations. Thus, at least in the view of the trial judge, evidence in the stronger case became admissible in the weaker case.
The jury convicted Richmond of three counts of lewdness with a child under fourteen, and acquitted him on the other counts. The district court sentenced Richmond to three consecutive terms of life imprisonment with the possibility of parole after ten years. Richmond appeals.

Factual background regarding A.B.

Starting in 1996, Richmond lived occasionally with A.B., her mother, grandmother, and one other adult female. After moving to the Ponderosa Motel in Reno, Nevada, A.B. visited Richmond in his apartment, always staying in the bedroom to watch television. At some point, Richmond began touching A.B. in private areas on her body. A.B. testified that Richmond made her touch his genitals and unsuccessfully attempted to persuade A.B.’s cousin to do the same. In addition, A.B. testified to “fuzzy kisses” that Richmond would give her, by putting his mouth on her belly and blowing on it. On another occasion, according to A.B.’s testimony, Richmond touched her genitals through her clothes while she pleaded with him to stop. Lastly, A.B. testified to an instance where A.B.’s dog, Keno, bit Richmond’s crotch, after which he exposed himself and engaged in sexually suggestive behavior.

A.R.’s testimony at A.B.’s trial

As noted, the other alleged child victim, A.R., testified at A.B.’s trial on behalf of the State.[3] Richmond lived in A.R.’s apartment complex during the summer of 1999, when she was ten *927 or eleven years of age. A.R., who lived with her mother and sister, visited Richmond several times alone at his apartment. This would usually occur after school between 2:30 p.m. and 4:30 p.m., until her mother would return home from work. A.R. also spent the night several times at Richmond’s apartment. While at Richmond’s apartment, A.R. would help around the house and also watch television.
A.R. testified at trial to one occasion where Richmond indicated his desire to take her to Disneyland and get a room with only one bed and ‘ ‘break [her] into being a woman.’ ’ In addition, A.R. testified to several instances of sexual molestation by, or intercourse with, Richmond.

Other evidence introduced at A.B.’s trial concerning A.R.

Detective Adam Wygnanski testified on behalf of the State concerning his contact with Richmond following the report by A.R. Wygnanski testified that as soon as he identified himself to Richmond, Richmond calmly responded: “I know what this is all about. I am not a child molester.” According to Wygnanski, Richmond admitted to feeling “really sick that he was even thinking about the thought,” referring to his emotional reaction to his conduct with regard to A.R.
Detective Rebecca Clark interviewed Richmond on videotape, after a valid waiver of his rights under Miranda v. Arizona.[4] Detective Clark testified to Richmond’s statements that he answered A.R.’s questions about sex, drew sexually explicit pictures of canine and human female genitalia, and taught her how to masturbate.[5] The detective also testified that during the interview, Richmond voluntarily drew a picture of the female genitals resembling the one he had drawn for A.R. The district court admitted this drawing into evidence and allowed the jury to view the videotape.
As noted above, Richmond was convicted at trial of A.B.’s allegations.

DISCUSSION

Braunstein

The majority of the issues presented in this appeal hinge on our recent decision in Braunstein v. State, addressing the admissibility of prior bad act evidence in prosecutions involving sexual misconduct. Prior to Braunstein, we followed a rule developed in *928 McMichael v. State,[6] Findley v. State,[7] and their progeny.[8] McMichael held that evidence showing a defendant possesses a propensity for sexual aberration is relevant to the defendant’s intent in a sex-crime prosecution.[9] Findley extended this principle to the effect that the probative value of such evidence outweighs the risk of prejudice as a matter of law.[10]
The rule in McMichael and Findley remained in effect at the time of Richmond’s trial. However, subsequent to Richmond’s trial, we overruled these cases in Braunstein, stating:
[W]e specifically . . . repudiate the legal proposition stated in McMichael v. State that evidence showing an accused possesses a propensity for sexual aberration is relevant to the accused’s intent.[11]
In doing so, we held that the district court must analyze the proposed evidence under NRS 48.045(2).[12]

Retroactivity

Richmond’s briefs, filed prior to Braunstein, urged us to overrule the McMichael line of cases. We now consider whether Braunstein applies to Richmond’s appeal.
In determining whether a new rule of criminal law applies retroactively, we have inquired whether the new rule derives from the United States Constitution or from state law. A new federal constitutional rule must be applied retroactively to all cases which are not final, i.e., which have not finished the process of direct appeals and certiorari to the United States Supreme Court.[13] In contrast, “[w]hen questions of state law are at issue, state courts *929 generally have the authority to determine the retroactivity of their own decisions.”[14]
The new rule in Braunstein simply interprets NRS 48.045(2), an evidence statute concerning the admissibility of prior bad acts. This is clearly an issue of state law, and does not derive from the United States Constitution. We have generally refused to apply new rules of state law retroactively.[15]
We now adopt the United States Supreme Court’s retroactivity rule enunciated in Griffith v. Kentucky[16] for new rules of state law; therefore, we will apply a new rule to all cases on direct appeal regardless of whether the new rule is based on the Federal Constitution or state law. This promotes consistency and fairness because a new rule is applied to all cases not finalized on direct appeal. However, we further hold that retroactivity of a new rule of state law is only applicable when the issue has been preserved for appeal.[17] Accordingly, we must now determine whether Richmond has preserved the prior bad act issue for appeal.

Appellate review

The district court admitted A.R.’s allegations to prove a propensity for sexual aberration. Richmond made a motion in lim-ine to exclude A.R.’s testimony, but failed to renew the objection at trial.
In 1983, in the case of Daly v. State,[18] we adopted the rule that a motion in limine, without a contemporaneous objection during trial, is insufficient to preserve an issue for appeal. In that case, Daly filed a pretrial motion to exclude evidence of other uncharged acts of misconduct, which the district court granted.[19] At trial, however, witnesses referred to several uncharged acts in their testimony, and defense counsel did not object to the evidence or remind the district court of its prior ruling, nor did Daly raise the issue in his post-trial motion.[20] In concluding that Daly waived the issue for appeal, we stated:
*930 At least in situations where the district court has granted a party’s motion in limine to exclude evidence, the error, if any, does not occur until the matter arises during trial and the court permits introduction of the contested evidence. The making of the motion in limine, without further objection, is not enough in such circumstances to preserve the issue on appeal.[21]
Over a decade later, we again addressed the waiver issue in Staude v. State.[22] In his first trial, Staude filed a pretrial motion to exclude evidence of his prior conviction for voluntary manslaughter, and the district court denied the motion.[23] Staude’s first trial ended in a mistrial. In his second trial, Staude failed to renew his motion to exclude this evidence.[24] Following our conclusion that Staude failed to preserve the issue for appeal, we stated: “A ruling on a motion in limine is advisory, not conclusive; after denial of a pretrial motion to exclude evidence, a party must object at the time the evidence is sought to be introduced in order to preserve the objection for appellate review.”[25]
Thereafter, we decided Rice v. State[26] There, Rice filed a motion in limine to exclude evidence concerning the victim’s cause of death and injuries that became evident to medical personnel following the victim’s admission to the hospital.[27] The district court decided to limit the testimony regarding the extent of the victim’s injuries.[28] But the court decided to admit evidence of the cause of the victim’s death after hearing the State’s expert testify outside the presence of the jury.[29] Thereafter, the State made comments during opening statement regarding the victim’s injuries discovered by medical personnel following the victim’s admission to the hospital.[30] Because Rice failed to object to these statements, we concluded that the issue was waived on appeal.[31]
Because Richmond failed to renew his objection regarding the admission of the prior bad acts during trial, the State contends that Richmond has waived this issue for appeal. Richmond, however, urges this court to overrule our cases that hold that a motion *931 in limine does not preserve an issue for appeal. For support, Richmond presents three policy arguments against the rule: (1) that it wastes the court’s time for an attorney to renew all objections from motions in limine, (2) that motions in limine serve no purpose if they cannot preserve issues for appeal, and (3) that forcing a defense attorney to renew objections during trial prejudices the jury because it might appear that the defense attorney is attempting to obstruct the presentation of evidence. In light of Richmond’s policy arguments, we now take this opportunity to reconsider this issue.
The federal circuit courts that have considered this issue are divided.[32] The Fifth Circuit requires a contemporaneous objection to the admissibility of the evidence during trial to preserve the issue for appeal, “unless a good reason exists not to do so.”[33] The Fifth Circuit’s view is predicated on the theory that a motion in limine is essentially a hypothetical situation and that a trial court is in a better position to rule on an evidentiary issue in light of a specific trial situation.[34] The Eighth Circuit is in accord with the Fifth Circuit’s view, but has recognized an exception to the general rule if a trial court makes a definitive ruling on a pretrial motion.[35]
On the other hand, the Ninth Circuit, which adopted the Third Circuit’s approach, has held:
[W]here the substance of the objection has been thoroughly explored during the hearing on the motion in limine, and the trial court’s ruling permitting introduction of evidence was explicit and definitive, no further action is required to preserve for appeal the issue of admissibility of that evidence.[36]
The Ninth Circuit noted that the purpose of a pretrial motion is to avoid cluttering up the trial and to reduce the need for sidebar *932 conferences and arguments outside the presence of the jury.[37] Today, we adopt the Ninth Circuit’s more flexible approach.
We, therefore, hold that where an objection has been fully briefed, the district court has thoroughly explored the objection during a hearing on a pretrial motion, and the district court has made a definitive ruling, then a motion in limine is sufficient to preserve an issue for appeal. To the extent that Daly, Staude, and Rice are inconsistent with our holding today, they are modified.
In applying this approach, we conclude that Richmond preserved the prior bad act issue for appeal. The district court held a Petrocelli hearing and ruled the evidence admissible. There was no hint that the district court might reconsider the issue and change its ruling. Accordingly, we permit Richmond to raise on appeal his objection to the introduction of the prior sexual bad acts.

Evidence of prior sexual bad acts

The general rule under Nevada’s rules of criminal evidence is that “[ejvidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.’ ’[38] However, such evidence may be admissible for a purpose not related to the character of the defendant, such as “motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.”[39] Notably, we have held that it is “heavily disfavored” to use prior bad act evidence to convict a defendant ‘ ‘because bad acts are often irrelevant and prejudicial and force the accused to defend against vague and unsubstantiated charges.”[40] Our concern has been that this evidence will unduly influence the jury to convict the defendant because, based on that evidence, the jury believes the defendant is a bad person.[41]
We conclude that, under a Braunstein analysis, the district court erroneously admitted A.R.’s testimony. First, the motive exception is inapplicable under these facts. The motive exception generally applies to establish the identity of the criminal, or to prove mal *933 ice or specific intent.[42] The motive exception may also be applicable where the charged crime was motivated by a desire to hide the prior bad act.[43] Richmond had already begun molesting A.B. before he met A.R., and molesting A.B. could not possibly disguise his crimes against A.R.
Regarding the motive exception, the dissent states that motive for a sex crime is an attraction to or obsession with the victim. In essence, the dissent contends that it is proper to admit prior bad act evidence to show a sexual propensity, which we held in Braunstein is inadmissible character evidence. Notably, McCormick on Evidence explains how the motive exception in cases involving sex crimes — to show a propensity for sexual aberration — is not applicable, as compared to its use in other crimes:
Unlike the other purposes for other-crimes evidence, the sex-crime exception flaunts the general prohibition of evidence whose only purpose is to invite the inference that a defendant who committed a previous crime is disposed toward committing crimes, and therefore is more likely to have committed the one at bar. Although one can argue for such an exception in sex offenses in which there is some question as to whether the alleged victim consented (or whether the accused might have thought there was consent), a more sweeping exception is particularly difficult to justify. It rests either on an unsubstantiated empirical claim that one rather broad category of criminals are more likely to be repeat offenders than all others or on a policy of giving the prosecution some extra ammunition in its battle against alleged sex criminals.[44]
As the dissent acknowledges, the State has other methods at its disposal to demonstrate why someone would sexually assault a child, i.e., expert witnesses.
Next, the common plan exception is inapplicable here, as this exception requires that “each crime should be an integral part of an overarching plan explicitly conceived and executed by the defendant.”[45] Indeed, this court has stated, ‘“The test is not whether the other offense has certain elements in common with the crime charged, but whether it tends to establish a preconceived plan which resulted in the commission of that crime.’ ”[46] *934 We have held that a sexual assault at the same location and perpetrated in the same manner a month before the sexual assault at issue was inadmissible because it did not establish a common plan.[47] Here, Richmond appeared simply to drift from one location to another, taking advantage of whichever potential victims came his way. His crimes were not part of a single overarching plan, but independent crimes, which Richmond did not plan until each victim was within reach.
Finally, the evidence regarding A.R. was not relevant under any of the other exceptions to NRS 48.045. Therefore, we conclude that the district court abused its discretion in admitting A.R.’s testimony.
Failure to exclude evidence in a Petrocelli hearing is harmless error where overwhelming evidence supports the conviction.[48] Here, the only evidence that Richmond had molested A.B. was A.B.’s testimony. In fact, it appears from the record that this was more a trial of A.R.’s allegations than A.B.’s allegations. Thus, we conclude that the evidence concerning A.B. was not overwhelming, and that the extensive and highly prejudicial evidence concerning A.R. was not harmless beyond a reasonable doubt.

Jury instruction on propensity for sexual aberration

Over Richmond’s objection, the district court instructed the jury that it could consider evidence of Richmond’s prior bad acts to find that he possessed a specific propensity for sexual aberration.[49] This instruction derives directly from an instruction we upheld in Bolin v. State.[50] Our decision in Bolin relied entirely upon McMichael and Findley, the cases we overruled in Braunstein. Because we held in Braunstein that “evidence of other acts offered to prove a specific emotional propensity for sexual aberration” is inadmissible,[51] we direct the district courts to cease instructing juries that such evidence is admissible.

*935
Testimony implying that Richmond had been previously jailed

A.B. twice testified, once during direct examination and once on cross-examination, that Richmond had been in jail prior to living with her family in 1999. Richmond did not object or move to strike that testimony, and thus a plain error analysis applies.[52] It is error for a witness to testify in such a manner that the jury could infer that the defendant had engaged in prior criminal activity.[53]
‘ ‘To be plain, an error must be so unmistakable that it is apparent from a casual inspection of the record.”[54] Here, the remarks were brief, and Richmond concedes that the attorneys did not purposefully solicit them. A.B. did not state why Richmond was in jail. Further, between A.B.’s testimony that Richmond lived with her for three to four months prior to November 1999, and A.R.’s testimony that she visited Richmond in his apartment in the summer of 1999, the jury could infer that any time Richmond spent in jail was brief. The district court did not commit plain error in failing to sua sponte strike this testimony.

CONCLUSION

The new evidentiary rule, which we announced in Braunstein, applies to all cases not finalized on direct appeal and where the issue has been preserved for appeal.
Because we conclude that the district court erred at trial, we reverse Richmond’s conviction and remand the case for a new trial.
Leavitt and Becker, JJ., concur.

 118 Nev. 68, 40 P.3d 413 (2002).

 Petrocelli v. State, 101 Nev. 46, 692 P.2d 503 (1985).

 Richmond was also convicted of one count of lewdness with a minor under the age of fourteen years for the allegations made by A.R. This court, in Docket No. 38408, recently affirmed his conviction.

 384 U.S. 436 (1966).

 A.R.’s testimony did not actually describe this incident.

 94 Nev. 184, 577 P.2d 398 (1978), overruled on other grounds by Meador v. State, 101 Nev. 765, 711 P.2d 852 (1985), and overruled by Braunstein, 118 Nev. 68, 40 P.3d 413.

 94 Nev. 212, 577 P.2d 867 (1978), overruled by Braunstein, 118 Nev. 68, 40 P.3d 413.

 Braunstein, 118 Nev. at 73-75, 40 P.3d at 417-18.

 94 Nev. at 189, 577 P.2d at 401.

 94 Nev. at 215, 577 P.2d at 868; see also Braunstein, 118 Nev. at 75, 40 P.3d at 418.

 Braunstein, 118 Nev. at 73, 40 P.3d at 417 (footnote omitted).

 NRS 48.045(2) provides:
Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

 See Griffith v. Kentucky, 479 U.S. 314, 328 (1987).

 American Trucking Assns., Inc. v. Smith, 496 U.S. 167, 177 (1990) (plurality opinion).

 See Garner v. State, 116 Nev. 770, 788-89, 6 P.3d 1013, 1025 (2000), cert. denied, 532 U.S. 929 (2001); Gier v. District Court, 106 Nev. 208, 212-13, 789 P.2d 1245, 1248 (1990).

 479 U.S. 314, 328 (1987).

 Cf. Schoels v. State, 115 Nev. 33, 36-37, 975 P.2d 1275, 1276-77 (1999).

 99 Nev. 564, 568, 665 P.2d 798, 801 (1983).

 Id. at 567, 665 P.2d at 801.

 Id. at 568, 665 P.2d at 801.

 Id. (citation omitted).

 112 Nev. 1, 908 P.2d 1373 (1996).

 Id. at 5, 908 P.2d at 1376.

 Id.

 Id.

 113 Nev. 1300, 949 P.2d 262 (1997).

 Id. at 1310, 949 P.2d at 269.

 Id. at 1311, 949 P.2d at 269.

 Id.

 Id.

 Id.

 See Patmerin v. City of Riverside, 794 F.2d 1409, 1412 (9th Cir. 1986). In addition, we note that state courts are also split on this issue. Id. at 1412 n.3.

 Rojas v. Richardson, 703 F.2d 186, 189 (5th Cir.), opinion set aside for other reasons on reh’g, 713 F.2d 116 (5th Cir. 1983).

 See U.S. v. Graves, 5 F.3d 1546, 1552 (5th Cir. 1993).

 See United States v. Johnson, 720 F.2d 519, 522 (8th Cir. 1983) (stating that pretrial rulings of admissibility of evidence are “merely tentative,” and therefore failure to make a contemporaneous objection at trial precludes appellate review); see also Greger v. International Jensen, Inc., 820 F.2d 937, 941-42 (8th Cir. 1987) (stating that if the trial court made a definitive pretrial ruling on the issue, there is no need to continue objecting).

 Palmerin, 794 F.2d at 1413; see also American Home Assur. v. Sunshine Supermarket, 753 F.2d 321, 324 (3d Cir. 1985) (“ft]f an issue is fully briefed and the trial court is able to make a definitive ruling, then the motion in lim-ine provides a useful tool for eliminating unnecessary trial interruptions.”).

 Palmerin, 794 F.2d at 1413.

 NRS 48.045(2).

 Id.

 Tavares v. State, 117 Nev. 725, 730, 30 P.3d 1128, 1131 (2001); accord Walker v. State, 116 Nev. 442, 445, 997 P.2d 803, 806 (2000).

 Tavares, 117 Nev. at 730, 30 P.3d at 1131.

 1 McCormick on Evidence § 190, at 665 (John W. Strong ed., 5th ed. 1999).

 Id. at 661.

 Id. at 669-70 (footnotes omitted).

 Id. at 661.

 Nester v. State of Nevada, 75 Nev. 41, 47, 334 P.2d 524, 527 (1959) (quoting 1 John Henry Wigmore, Wigmore on Evidence § 300 (2d ed. 1923)) (emphasis added).

 See Mitchell v. State, 105 Nev. 735, 738, 782 P.2d 1340, 1342 (1989).

 See Chappell v. State, 114 Nev. 1403, 1407, 972 P.2d 838, 840 (1998).

 The challenged instruction provided:
Evidence of a person’s character or a trait of his character or evidence of other crimes, wrongs, or acts, is not admissible to show that he acted in conformity therewith on a particular occasion.
However, such evidence is admissible for other purposes, such as proof of motive, intent, knowledge, identity, or common scheme or plan, and as evidence that the person possesses a specific emotional propensity for sexual aberration.
(Emphasis added).

 114 Nev. 503, 528-29, 960 P.2d 784, 800-01 (1998).

 118 Nev. at 75, 40 P.3d at 418.

 See Cordova v. State, 116 Nev. 664, 668, 6 P.3d 481, 484 (2000).

 Thomas v. State, 114 Nev. 1127, 1142, 967 P.2d 1111, 1121 (1998).

 Garner v. State, 116 Nev. 770, 783, 6 P.3d 1013, 1022 (2000), cert. denied, 532 U.S. 929 (2001).