BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT;
AND BMW OF NORTH AMERICA, INC., APPELLANTS,
v. ALYSON ROTH; AND JENNIFER E. STAPLETON,
RESPONDENTS.

No. 50262

BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT
AND BMW OF NORTH AMERICA, INC., APPELLANTS,
v. ALYSON ROTH; AND JENNIFER E. STAPLETON,
RESPONDENTS.

No. 52496

April 14, 2011                           252 P.3d 649

*Lewis & Roca LLP* and *Daniel F. Polsenberg* and *Heidi J. Parry Stern*, Las Vegas; *Law Offices of Greg W. Marsh* and *Greg W. Marsh*, Las Vegas; *Bowman and Brooke, LLP*, and *Paul G. Cereghini* and *Curtis J. Busby*, Phoenix, Arizona, for Appellants.

*Mainor Eglet Cottle* and *Robert Cottle* and *Robert T. Eglet*, Las Vegas, for Respondent Roth.

*Dennett Winspear, LLP*, and *Gina Gilbert Winspear* and *Ryan L. Dennett*, Las Vegas, for Respondent Stapleton.

Before the Court EN BANC.

## OPINION

By the Court, PICKERING, J.:

This is an appeal from an order granting a new trial in a tort case involving a single-car rollover. The injured passenger, respondent Alyson Roth, obtained a $5.9 million judgment against the driver, respondent Jennifer Stapleton, but lost on her product defect/crashworthiness claim against the car's manufacturer, appellant Bayerische Motoren Werke (BMW). The district court granted Roth a new trial against both BMW and Stapleton, and BMW appeals pursuant to NRAP 3A(b)(2).

The district court granted the new trial based on its finding that BMW's counsel repeatedly violated a pretrial order in limine. The order in limine grew out of Nevada's seatbelt statute. This statute requires adults riding in cars to wear seatbelts but adds that "A violation of [the statute is] not a moving traffic violation [and m]ay not be considered as negligence [or] misuse or abuse of a product or as causation in any [civil] action." NRS 484D.495(4). Because Roth claimed that she was wearing her seatbelt yet was ejected and suffered grave injury due to defects in the car's safety restraint system, the district court permitted BMW to defend with evidence and argument that Roth had not, in fact, been wearing her seatbelt. However, the court hedged this permission with a limiting instruction that told the jury it could consider the seatbelt evidence only in "evaluating [Roth's] claim[s] against BMW that the subject vehicle was defective and unreasonably dangerous," not "for any other purpose." The district court found BMW's counsel went out of these bounds in voir dire, opening statement, and closing argument, committing prejudicial misconduct that merited a new trial under *Lioce v. Cohen*, 124 Nev. 1, 174 P.3d 970 (2008).

We reverse. For violation of an order in limine to constitute attorney misconduct requiring a new trial, the order must be specific, the violation must be clear, and unfair prejudice must be shown. The standards of review established in *Lioce* apply. Here, the order did not limit the seatbelt evidence that could be introduced, only the arguments that could be made about that evidence. The order's parameters were far from clear—as is Nevada law, generally, concerning seatbelt evidence in a crashworthiness case—yet Roth did not object to any alleged violations by BMW of the order in limine until closing argument. Applying *Lioce*'s strict standards, we cannot say that the unobjected-to violations

amounted to plain error, or that the two objected-to violations involved misconduct so extreme that the objection and admonishment did not remove its prejudicial effect. In reaching this conclusion, we reject as error the district court's legal determination that Roth's motion in limine acted as a continuous objection and hold instead that, for violation of an order in limine to constitute objected-to misconduct under *Lioce*, the complaining party must make a contemporaneous objection when the asserted violation occurs.

## I.

### A.

The accident occurred in Clark County, Nevada. Roth and Stapleton were driving across country in Roth's 1987 BMW 528e. Stapleton was driving, and Roth was sleeping in the front passenger seat with her seat back partially reclined. Traveling at an estimated speed of between 75 and 90 mph, the car strayed onto the shoulder, swerved back across the highway, decelerating, and rolled into the desert at a trip speed of 36 mph. The car rolled two and one-half times before coming to rest on its roof. During the rollover, Roth was ejected. She survived but suffered a severe spinal cord injury that rendered her a paraplegic. Stapleton's injuries were minor.

Roth sued both Stapleton and BMW. She proceeded to trial on claims of negligence against Stapleton and strict product liability against BMW. Roth made no claim that the BMW caused the accident. Rather, Roth alleged that driver error caused the accident and that, although she was wearing her seatbelt, defects in the BMW's safety restraint system allowed her to be thrown from the car. These defects made the car less crashworthy and caused greater injuries than an ordinary consumer who was properly restrained should expect to suffer in an accident like this.

Roth and BMW had completely opposite theories of how Roth came to be ejected. Roth and Stapleton testified that Roth was wearing her seatbelt. Roth's experts accepted this testimony as fact. They concluded that multiple defects in the car allowed her to be ejected out the rear passenger door after the car had rolled twice. In their view, the passenger side B-pillar (the roof support between a car's front and rear side windows) separated from the roof rail during the rollover, which both deformed the geometry of the seatbelt system and popped the rear door open. When this happened, Roth slipped underneath her suddenly slack seatbelt, over her reclined seat, and out the rear door.

BMW disputed Roth's theory that she was ejected out the rear door as inconsistent with the physics of the accident. It maintained that the physical evidence showed that Roth was not wearing her

seatbelt and was ejected out the front passenger window before the vehicle began its second roll.[1] BMW's experts theorized that debris caught the latch on the rear passenger door, causing it to open on the final roll, which in turn separated the B-pillar from the roof rail as the car pitched onto the open door. However, they argued the B-pillar failure was irrelevant, since by then Roth had already been ejected out the front passenger side window.

Trial lasted almost a month. The jury found that Stapleton had been negligent and caused Roth's injuries, awarding Roth $5.9 million against Stapleton. However, the jury returned a defense verdict as to BMW. Answering special interrogatories, it marked "no" to Question No. 1, which asked: "Was the subject vehicle defective?" Given this answer, the verdict form directed the jury to skip the questions that followed as to BMW. It thus did not answer Question No. 4, which asked: "Was the defect in the subject vehicle a proximate cause of the damages or injuries to Alyson Roth?"

## B.

In the motion in limine underlying this appeal, Roth asked for "an Order prohibiting BMW, its attorneys and witnesses from any argument, opinion or even mentioning any information that would imply that Alyson Roth was not wearing her seat belt at the time of the subject incident." Roth sought this relief even though, as her motion in limine acknowledged, her claim against BMW was that she was wearing her seatbelt and the car's safety restraint system failed. Her argument was that she should be allowed to testify that she was wearing her seatbelt but that BMW should be prohibited from presenting evidence or argument to the contrary.

Roth based her motion in limine on Nevada's seatbelt statute, now codified as NRS 484D.495. Subsection 1 of NRS 484D.495 makes it "unlawful to drive a passenger car manufactured after . . . January 1, 1970, unless it is equipped with at least two shoulder-harness-type safety belt assemblies for use in the front seating positions," while subsection 2 mandates that any person "driving, and any passenger who [i]s 6 years of age or older . . . shall wear a safety belt if one is available." Roth's motion relied on subsection 4 of NRS 484D.495, which reads in full as follows:

---

[1] Roth's seatbelt was found in the stowed position shortly after the accident and lacked the pronounced load marks on the latch plate and webbing that a barrel roll accident like this one normally will produce. Also, BMW maintained that contact marks on and damage to the front passenger door and window frame, from which strands of hair were recovered, showed that Roth had been ejected out the front window. It also argued that too much cargo had been loaded into the back seat for Roth to have a clear ejection path out the rear door.

A violation of subsection 2:

(a) Is not a moving traffic violation under NRS 483.473.[2]

(b) May not be considered as negligence or as causation in any civil action or as negligent or reckless driving under NRS 484B.653.

(c) May not be considered as misuse or abuse of a product or as causation in any action brought to recover damages for injury to a person or property resulting from the manufacture, distribution, sale or use of a product.

Submitted in connection with the motion in limine were excerpts from the depositions of Roth and Stapleton, who both testified that Roth had her seatbelt on, and expert reports that previewed the competing theories Roth and BMW would offer at trial to explain her ejection. Roth confirmed that her case theory was that the safety restraint system, including the seatbelt, was defective. BMW argued that NRS 484D.495(4) did not by its terms—and constitutionally could not—prohibit evidence of seatbelt nonuse in a crashworthiness case seeking damages for enhanced injuries due to alleged defects in a car's safety restraint system. It insisted that, "[t]o defend against plaintiff's allegations of defective seatbelt design and other crashworthy defects, BMW must be permitted to demonstrate that if plaintiff was not wearing her seatbelt, her allegations of design defect with respect to the seat belt are moot."

The district court largely agreed with BMW. Its written order:

ORDERED, ADJUDGED, AND DECREED that as plaintiff raises a claim of defect relating to the seat belts in the subject vehicle, in order for plaintiff to demonstrate the seatbelt was defective, plaintiff must show that the seat belt was used at the time of the accident. Therefore, the BMW defendants must be permitted to present evidence of seat belt non-use. Accordingly, plaintiff's Motion in Limine to Exclude Evidence Of Non-Use Of Seatbelt is denied. A limiting instruction will be given at the time evidence of seat belt use or nonuse is mentioned.

As promised, the court crafted a limiting instruction (with input from all parties), which read as follows:

BMW [will introduce] [has introduced] evidence the Plaintiff was not wearing her seatbelt. This evidence may be considered by you in evaluating Plaintiff's claim against BMW that the subject vehicle was defective and unreasonably dangerous. You may not consider this evidence for any other purpose.

---

[2]NRS 483.473 establishes a demerit and point system for traffic violations by persons who hold a Nevada driver's license. NRS 484B.653 makes reckless driving a misdemeanor and provides that a driver's willful or wanton disregard of safety, resulting in death or substantial bodily harm to another, is a felony.

This instruction was given before opening statements and included in the final written instructions the jury received.

## C.

In his opening statement, Roth's lawyer told the jury that the evidence would show that Roth was wearing her seatbelt when the accident occurred. He described "the sixty-four thousand dollar question" as being: "When you wear your seat belt should you remain in a car in a crash?" Before opening statements, the jury had been given an instruction on proximate cause, along with the limiting instruction on seatbelt evidence. Tying the two instructions together, Roth's lawyer continued:

> Proximate cause means something happened as a consequence of something else. As a consequence of the roof collapsing she's ejected. As a consequence of the restraint not working she's ejected. As a consequence of being ejected she's a paraplegic.

BMW's lawyer's opening statement mirrored Roth's, only in reverse. After previewing the physical evidence, he said:

> The evidence, the physical evidence, will tell us what happened to Ms. Roth in the accident, and it tells us that she was ejected because she wasn't wearing her belt. And further, that had she been wearing her seatbelt she would not have been ejected, and had she not been ejected she would not have sustained her spinal cord injury.

Neither Roth nor Stapleton, who sided with Roth on her crashworthiness theory, objected to these statements.

Whether Roth was belted when the accident occurred and how she came to be thrown from the car were thoroughly vetted at trial. However, the order in limine and its companion limiting instruction did not come up until shortly before closing arguments, when Roth made an NRCP 50(a) motion for judgment as a matter of law on BMW's defense of assumption of the risk, which was granted. The parties then turned to the issue of causation and the extent to which the limiting instruction concerning seatbelt evidence permitted argument that any defect in the safety restraint system could not have caused Roth's enhanced injuries if, in fact, the seatbelt was not being worn. During the colloquy, BMW's lawyer, Paul Cereghini, advised that he planned to make the same points in closing argument regarding seatbelt nonuse that he had made during his opening statement. In response, the district judge stated, "And I think you're going to be okay because you didn't get slayed after your opening statement, so you're unlikely to get

slayed or held in contempt after closing if it stays along the same lines.''

BMW's closing argument on the seatbelt issue was similar to, but less expansive than, its opening statement. Cereghini reprised BMW's evidence and then turned to Roth's theories: ''[L]et's look at what [Roth is] claiming here and ask the question, did any of these alleged defects cause any injury to Ms. Roth or the accident? Take the seatbelt. It wasn't being worn . . . .'' Roth objected. At the bench conference that followed, the court sustained Roth's objection. It deemed the comment too broad and a violation of the order in limine. However, the court reiterated that, ''[y]ou are permitted to say that there is evidence she was not wearing her seat belt, so the seat belt couldn't have been defective, and, therefore, the defect in the seat belt could not be a cause of the injuries. But you can't say anything beyond that.''[3] At Roth's request, the district judge struck the comment and re-read the limiting instruction on seatbelt evidence.

Later in his closing argument, BMW's lawyer referred to Roth's seatbelt and B-pillar claims as ''red herrings.'' He continued: ''Ms. Roth is ejected from her side window, she was ejected because she was not belted and the . . . .'' Roth objected, the district court sustained Roth's objection, and the court directed the lawyer to clarify the statement, which he did:

> The plaintiff claims there was a seatbelt defect. The seatbelt, we believe the evidence has shown, was not being worn, so there's no proof that any defect in the seatbelt was a cause of injury to Ms. Roth. We've proven with respect to this question that the ejection happened before the roof impact and before the B-pillar separation . . . so none of those alleged defects were a cause of injury.

The clarification was accepted without objection. The final instructions included the limiting instruction on the jury's use of the seatbelt evidence.

### D.

As noted, the jury returned a verdict in favor of Roth and against Stapleton for $5.9 million but against Roth and in favor of BMW, finding no product defect. After the court entered judgment on the jury's verdict, Roth timely moved for a new trial as to BMW. Roth based her motion on NRCP 59(a)(2), which provides that

---

[3]BMW attached the supplemental transcript in which this exchange appears to its July 1, 2010, motion to supplement appendix, which was not opposed. We grant the motion, and therefore, we consider the supplemental transcript.

"[m]isconduct of the . . . prevailing party" may warrant a new trial, when the misconduct "materially affect[s] the substantial rights of an aggrieved party."

In her motion for new trial, Roth charged BMW's counsel with myriad misconduct, ranging from use of leading questions to failure to provide translations of German documents (that were excluded in consequence). Her main point—and the point credited by the district court—was that BMW's lawyer intentionally violated the order in limine during closing argument when he made the two objected-to statements about Roth's seatbelt nonuse described above.

The district court granted a new trial on Roth's claims against both BMW and Stapleton.[4] To BMW's lawyer's two objected-to statements during closing argument the court added as further acts of misconduct statements he made about Roth's seatbelt nonuse during voir dire and in opening statement. It concluded that his misconduct was intentional, repeated, continuous, and persistent, and that it prejudiced both Roth and Stapleton. The district court then ordered BMW to pay Roth's and Stapleton's attorney fees and costs as a sanction for attorney misconduct.

## II.

An attorney's violation of an order in limine can amount to misconduct justifying a new trial under NRCP 59(a)(2) if the standards established by *Lioce v. Cohen*, 124 Nev. 1, 174 P.3d 970 (2008), are met. Whether an attorney's comments are misconduct is a question of law that we review de novo. *Id.* at 20, 174 P.3d at 982. "A violation of an order granting a motion in limine may only serve as a basis for a new trial when the order is specific in its prohibition and the violation is clear." *Black v. Schultz*, 530 F.3d 702, 706 (8th Cir. 2008); *accord Garden View, LLC v. Fletcher*, 916 N.E.2d 565, 589 (Ill. App. Ct. 2009); *Kjerstad v. Ravellette Publications, Inc.*, 517 N.W.2d 419, 426 (S.D. 1994). To justify a

---

[4]Stapleton did not join Roth's motion for a new trial. Although Stapleton's counsel attended both hearings on the new trial motion, she did not argue in support of it. At the initial hearing, Roth orally confirmed that her motion for new trial only went to her claims against BMW. The district judge later advised the parties that if she granted the motion, it would apply to both defendants.

Given that Roth did not move for a new trial as to Stapleton, that Stapleton did not join Roth's motion, that the district court did not make findings of fact or conclusions of law to justify a new trial against Stapleton, and our reversal of the new trial order as to BMW, we conclude that the district court erred in granting the motion as to Stapleton and reverse the new trial as to Stapleton.

new trial, as opposed to some other sanction, unfair prejudice affecting the reliability of the verdict must be shown, *Black*, 530 F.3d at 706, which includes consideration of whether the "argument was actually proper or improper under the law." *People v. Ward*, 862 N.E.2d 1102, 1142 (Ill. App. Ct. 2007).

The standards that a district court is to apply to a motion for new trial based on attorney misconduct vary depending on whether counsel objected to the misconduct during trial. *Lioce*, 124 Nev. at 6-7, 174 P.3d at 973. For objected-to misconduct, a party moving for a new trial bears the burden of demonstrating that the misconduct is so extreme that objection, admonishment, and curative instruction cannot remove its effect. *Id.* at 17-18, 174 P.3d at 981. If the misconduct is not objected-to, the district court should deem the issue waived unless it is plain error. *Id.* at 19, 174 P.3d at 981-82. Plain error in this context exists "only when the misconduct amounted to 'irreparable and fundamental error . . . that results in a substantial impairment of justice or denial of fundamental rights such that, but for the misconduct, the verdict would have been different.'" *Grosjean v. Imperial Palace*, 125 Nev. 349, 364, 212 P.3d 1068, 1079 (2009) (quoting *Lioce*, 124 Nev. at 19, 174 P.3d at 982).

"The decision to grant or deny a motion for new trial rests within the sound discretion of the trial court." *Southern Pac. Transp. Co. v. Fitzgerald*, 94 Nev. 241, 244, 577 P.2d 1234, 1236 (1978). "While review for abuse of discretion is ordinarily deferential, deference is not owed to legal error." *AA Primo Builders v. Washington*, 126 Nev. 578, 589, 245 P.3d 1190, 1197 (2010); *see Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."); *Tanner v. Beck ex rel. Hagerty*, 907 So. 2d 1190, 1196 (Fla. Dist. Ct. App. 2005) ("Were we to agree with the premise upon which the trial court relied and merely disagree with the trial court's decision as to whether to grant a new trial based upon that premise, we would not reverse"; reversing because "(1) defense counsel did not violate the motion in limine; (2) his argument was fair argument in light of the evidence presented at trial; and (3) even if the jury could have drawn an improper inference from [his] comment, any potential prejudice was cured by the trial court's subsequent admonition and curative instruction.").

▉▉▉▉▉ ▉▉▉▉

## III.

▉▉▉▉▉▉

"When ruling on a motion for a new trial based on attorney misconduct, district courts must make express factual findings, applying the [*Lioce*] standards." *Lioce*, 124 Nev. at 7, 174 P.3d at 974. In its order granting Roth's motion for a new trial, the district court identified three occasions in which Cereghini engaged in misconduct: voir dire, opening statement, and closing argument. We consider each in turn.

### A.

▉▉▉▉▉▉

As voir dire began, the district judge asked the lawyers to introduce themselves to the venire and offer a short factual description of the case. BMW's lawyer said, "plaintiff claims she was seatbelted [and] BMW claims that the physical evidence shows that she was not wearing her seatbelt." The district judge interrupted and admonished him to only provide factual statements and refrain from arguing the case.[5] In the order granting a new trial, the district court treats this as an instance of BMW committing misconduct by violating the order in limine. This finding is clearly erroneous. The order in limine *permitted* introduction of seatbelt evidence. Cereghini's statement in voir dire violated neither the order in limine nor the limiting instruction and did not amount to misconduct.

### B.

#### 1.

The order granting a new trial identifies four instances in which BMW's lawyer violated the order in limine during his opening statement: (1) his statement that the physical evidence would show Roth was ejected because she was not wearing her seatbelt and that, had she not been ejected, she would not have suffered a spinal cord injury; (2) his observation that Stapleton was wearing her seatbelt, wasn't ejected, and only suffered minor soft tissue injuries; (3) the statement that the rear door opened "after Ms. Roth's ejection, which occurred because she was not seatbelted";

---

[5]The order granting Roth's motion for a new trial indicates that the court had to instruct him three times not to argue BMW's case. The record shows that the district judge admonished BMW for one remark and that BMW then adhered to the court's instruction. We note that the Nevada Jury Improvement Commission recommends the use of "mini-opening statements" at the beginning of jury selection to introduce the jurors to "the claims and the disputed factual issues involved." *Report of the Supreme Court of Nevada* 59-60 (2002). *See also* NRS 16.090(1) (providing that once the jury is sworn, the pleadings may be read or the issues stated).

and (4) a statement comparing the protection the vehicle afforded Stapleton, who was belted, with Roth, who was ejected through the front passenger window and seriously injured as a result of not having worn the seatbelt.

Roth did not object to any of these statements, nor did the court admonish BMW's counsel sua sponte for making them. Nonetheless, the district court analyzed the statements as objected-to misconduct under *Lioce*. Citing *Richmond v. State*, 118 Nev. 924, 932, 59 P.3d 1249, 1254 (2002), the district court held that the order in limine and its associated limiting instruction were definitive and clear, and that Roth's motion in limine constituted an adequate objection to what the court found was BMW's violation of them. This was error on both counts.

First, the order was definitive and specific only in permitting evidence to be introduced on whether Roth was wearing her seatbelt. It was neither definitive nor specific, however, as to the limitations being imposed on use of the seatbelt evidence. The reference to a limiting instruction was added by hand to the order denying Roth's motion in limine. While the limiting instruction said that the evidence that Roth was not wearing her seatbelt could only be considered "in evaluating [her] claim . . . that the subject vehicle was defective and unreasonably dangerous" and not "for any other purpose," it didn't explain what that meant or specify its prohibitions. Indeed, when BMW broached the question of cause-in-fact and how Roth could claim a defect in the seatbelt caused her injuries if she wasn't wearing it, the court stated, "I understand what you're saying," and that "causation is covered in numerous other instructions." In its prohibitory, as opposed to permissive, aspect, the order in limine was not definitive enough to obviate the need for a contemporaneous objection/proffer under *Richmond*, 118 Nev. at 932, 59 P.3d at 1254, much less specific enough to make a subsequent violation clear for purposes of establishing attorney misconduct under *Lioce*.

Second, while Roth's motion in limine may have preserved her objection to the admission of seatbelt evidence, that was not the basis for her motion for new trial or the order granting it and is not what she argues on appeal. Her argument is that BMW violated the limiting instruction associated with the order in limine, committing misconduct that merited a new trial under NRCP 59(a)(2). To claim misconduct associated with an asserted violation of an order in limine requires a contemporaneous objection, even when the order is clear, though this one was not.

The decision in *Wilson v. Vermont Castings, Inc.*, 170 F.3d 391 (3d Cir. 1999), is on point. In *Wilson*, as in this case, a pretrial

motion in limine produced a split ruling in a products liability case: The district court denied the motion in limine to the extent it sought to exclude evidence and argument as to the cause-in-fact of a fire; it granted the motion, however, to the extent it sought to characterize the plaintiff's conduct as negligent or as absolving the defendant of liability. *Id.* at 395 n.7. After a defense verdict, the plaintiff sought a new trial based on the defense's violation of the prohibitory aspect of the trial court's order in limine. Because the plaintiff did not contemporaneously object to the defendant's violations of the order in limine, the objections were deemed waived: "Because Wilson prevailed on the motion in limine to limit Vermont Castings's arguments, her counsel had an obligation to renew his objection once he thought Vermont Castings violated this ruling." *Id.*

### 2.

Although Roth argues otherwise, requiring a party to object to her opponent's violation of an order in limine to preserve error for purposes of a subsequent *Lioce* motion for new trial is fully consistent with *Richmond v. State*. In *Richmond*, the ruling on the motion in limine was unqualified; the district court denied Richmond's motion in limine to exclude testimony. 118 Nev. at 929, 59 P.3d at 1253. Richmond did not make a contemporaneous objection when the State offered the testimony at trial. *Id.* We concluded that the motion in limine preserved the claim of error. *Id.* at 932, 59 P.3d at 1254. In doing so, we held that "where an objection has been fully briefed, the district court has thoroughly explored the objection during a hearing on a pretrial motion, and the district court has made a definitive ruling, then a motion in limine is sufficient to preserve an issue for appeal." *Id.*

*Lioce* did not address *Richmond*. Rather, *Lioce* generally held, without considering the effect of a motion in limine, that unobjected-to attorney misconduct is waived unless it constitutes plain error. 124 Nev. at 19, 174 P.3d at 981-82. Accordingly, we now decide the question of whether a motion in limine serves as a continuing objection under *Lioce* to attorney misconduct consisting of violation of an order in limine.

Whether a motion in limine preserves error depends on whether the error alleged is in compliance with or violation of the court's ruling on the motion. *See* 21 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure: Evidence* § 5037.16, at 804-05 (2d ed. 2005). As in *Richmond*, where the admission or exclusion of evidence at trial is in harmony with the order in lim-

ine, the alleged error at trial is the same as the error alleged in the ruling on the motion. 118 Nev. at 929, 59 P.3d at 1253. Therefore, because there is no new error, the motion in limine properly preserves the error claim. However, when "the opposing party violates the terms of the initial ruling, objection must be made when the evidence is offered to preserve the claim of error for appeal." Fed. R. Evid. 103 advisory committee's comment, *reprinted in* 2 *McCormick on Evidence* Appendix A (5th ed. 2003) (citing *United States Aviation Underwriters v. Olympia Wings, Inc.*, 896 F.2d 949, 956 (5th Cir. 1990)). This is because the violation of the prior ruling introduces a new error into the case. Thus, an objection is required when an opposing party or the court violates an order in limine.

Judicial economy and fairness justify the rule requiring a contemporaneous objection to preserve error associated with an opposing party's violation of an order in limine:

> [O]bjection is required to preserve error when an opponent, or the court itself, violates a motion in limine that was granted. This rule is necessary to conserve judicial resources. Had plaintiff's counsel promptly objected to the violations of the motion in limine in this case, the trial court could have either avoided the violations or given an instruction to cure any harm suffered by the plaintiffs. The courts cannot adopt a rule that would permit counsel to sit silently when an error is committed at trial with the hope that they will get a new trial because of that error if they lose.

*United States Aviation Underwriters*, 896 F.2d at 956.

*United States Aviation Underwriters* is persuasive, and its reasoning applies here. When an attorney violates an order in limine, a contemporaneous objection to the violation affords the court and the parties the opportunity to correct the misconduct and/or clarify the order, if the order's parameters are unclear. The objection need not be elaborate, but it needs to be made. *See State v. Kallio*, 92 Nev. 665, 668, 557 P.2d 705, 707 (1976) (citing NRS 47.040(1)(a)).[6] Dispensing with the requirement of a contemporaneous objection would allow the proponent of the order in limine to remain silent and hope for a new trial even though, in many instances, an objection and curative instruction would prevent the need to relitigate the case. Thus, contemporaneous objections

---

[6]If the order in limine is unclear or compound, the court may, once objection is made, take up the issue outside the jury's presence in more detail as, in fact, occurred during closing argument in this case.

to claimed violations of an order produced by a motion in limine are required to prevent litigants from wasting judicial, party, and citizen-juror resources.

### 3.

Here, the conference before closing argument and the bench conferences during closing argument demonstrate the confusion regarding the limitations imposed on argument by the order in limine. Moreover, the district judge may have misapprehended the law, augmenting the confusion.

"Enough has been written about the 'seat-belt defense' to show the body of law related to it is split, fragmented and changing[, varying] in time, place, rationale, effect and implementation." *LaHue v. General Motors Corp.*, 716 F. Supp. 407, 410 (W.D. Mo. 1989). It is one thing to exclude seatbelt evidence and argument in a suit alleging that the accident itself—and therefore the injuries flowing from that accident—were caused by a defect in the automobile. *See Jeep Corporation v. Murray*, 101 Nev. 640, 708 P.2d 297 (1985), *superseded by statute on other grounds as stated in Countrywide Home Loans v. Thitchener*, 124 Nev. 725, 192 P.3d 243 (2008). It is another thing to exclude such evidence and argument in a crashworthiness case, where evidence that an automobile was equipped with seatbelts is generally admitted to defend the overall design of the safety restraint system and to defend against the claim that the defect in the safety restraint system was the cause-in-fact of the plaintiff's enhanced injuries, for which liability would not otherwise attach. *See Gardner By and Through Gardner v. Chrysler Corp.*, 89 F.3d 729, 737 (10th Cir. 1996); *DePaepe v. General Motors Corp.*, 33 F.3d 737, 745 (7th Cir. 1994); *General Motors Corp. v. Wolhar*, 686 A.2d 170, 175 (Del. 1996); *Clark v. Mazda Motor Corp.*, 68 P.3d 207, 209 (Okla. 2003). Thus, "in secondary-collision product-liability actions," seatbelt nonuse may necessarily "be admissible to show, *or, as in this action, rebut*, the essential element of causation." *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 202 (5th Cir. 2006) (emphasis added) (applying Texas law).

Seatbelt statutes take a variety of forms. David G. Owen, M. Stuart Madden & Mary J. Davis, *Madden & Owen on Products Liability* § 21:7 (3d ed. 2000 & Supp. 2010). We recognize that NRS 484D.495(4) addresses causation,[7] in addition to negligence and

---

[7] Of note, when the predecessor to NRS 484D.495(4) was enacted in 1985, the role that comparative fault should play, if any, in the context of strict product liability was actively being debated. *Jeep Corporation*, 101 Nev. at 645, 708 P.2d at 301 (citing *Young's Machine Co. v. Long*, 100 Nev. 692, 692 P.2d 24 (1984)).

abuse or misuse of product. However, unlike some seatbelt statutes, NRS 484D.495(4) does not say that " 'evidence of failure to wear a seat belt shall not be admissible' " in any proceeding. *See Barron v. Ford Motor Co. of Canada, Ltd.*, 965 F.2d 195, 198 (7th Cir. 1992) (quoting N.C. Gen. Stat. § 20-135.2A(d) and noting that, read literally, that statute would hold that, "if an irate passenger ripped off his seat belt, tore it from its moorings, and used it to strangle the driver, in the ensuing murder trial the prosecution would be forbidden to identify the murder weapon because to do so would be to show that the defendant had not been wearing his seatbelt"). Rather, NRS 484D.495(4)(b) and (c) say that "*[a] violation of section 2*" (the vehicle code provision requiring adults to wear seatbelts when riding in cars) " '[m]ay not be considered as negligence or . . . as misuse or abuse of a product or as causation" in any civil action. (Emphasis added.) This wording suggests that NRS 484D.495(4)(b) and (c) only bar evidence in a civil action that a party's conduct constituted a statutory violation of law, not evidence of the underlying conduct. *See Cantinca v. Fontana*, 884 A.2d 468, 471-72 (Del. 2005) (deeming this the "plain meaning" of a statute similarly prohibiting consideration of evidence of a "violation" of a mandatory smoke detector law); *Evans v. Evans*, 695 S.E.2d 173, 177 (Va. 2010) (interpreting a similarly worded statute as permitting a child's suit against her father for not putting her in a child restraint device; statute precluded only a negligence per se claim based on violation of the child safety restraint statute, or mention of the statutory provision). This would prevent use of the seatbelt statute to establish duty or fault but not the admissibility of the underlying fact the seatbelt was not being worn.

Although we do not resolve these issues now, we raise them to demonstrate that the order in limine may not have been as straightforward as Roth and the district judge assumed. Allowing BMW to introduce seatbelt nonuse evidence without arguing causation is a delicate and difficult line to draw.[8] The boundaries of such lines are established through the court's ruling on objections. If Roth had objected during BMW's opening statement, the court would have had an opportunity early in trial to define the boundaries of its ruling. Because Roth failed to object, however, that guidance was not provided. And as the exchange between the court and counsel before closing arguments reflects—"And I think you're [BMW's counsel, Cereghini] going to be okay because you didn't get slayed after your opening statement, so you're unlikely to get slayed or

---

[8]As the authorities discussed in this section suggest, once a plaintiff makes an affirmative claim that a vehicle's safety restraint system was used and failed, court-imposed limits on a manufacturer's ability to rebut such claims with proof that an integral part of the safety restraint system—the seatbelts— were not used will rarely, if ever, be appropriate.

held in contempt after closing if it stays along the same lines"—the failure to object to an opposing party's interpretation of an unclear order in limine can affect further proceedings in the case. *See also Beccard v. Nevada National Bank,* 99 Nev. 63, 65-66, 657 P.2d 1154, 1156 (1983) ("The failure to object to allegedly prejudicial remarks at the time an argument is made, and for a considerable time afterwards, strongly indicates that the party moving for a new trial did not consider the arguments objectionable at the time they were delivered, but made that claim as an afterthought.").

Therefore, we reaffirm that a fully briefed and definitively ruled-on motion in limine on an evidentiary question preserves error for challenges to whether the district court properly ruled on the motion. However, the motion in limine does not serve as an objection for violation of the order in limine, including attorney misconduct for that violation. To hold otherwise would adopt a rule that violates principles of judicial economy by "permit[ting] counsel to sit silently when an error is committed at trial with the hope that they will get a new trial because of that error if they lose." *United States Aviation Underwriters,* 896 F.2d at 956 (internal quotation omitted). Where the meaning of an order in limine is not clear, as was the case here, a party may not realize it has violated the order without the court's ruling on a contemporaneous objection. The objection allows the district court to instruct the parties on how the court will apply the order, and it provides the parties with a necessary opportunity to conform their conduct and remarks to the order. Therefore, a contemporaneous objection is required to preserve attorney misconduct for violating an order in limine.

Because BMW's comments during opening statement were not objected to, any claim that they amounted to attorney misconduct was waived unless they amounted to plain error. The lack of specificity in the court's order in limine and the genuine uncertainty in the law with respect to the seatbelt defense in crashworthiness cases, coupled with Roth's affirmative claim that the seatbelt and safety restraint system were defective, makes the misconduct claim associated with these comments highly questionable.

Even assuming the comments amounted to misconduct, they did not constitute plain error. The comments involved arguably improper causation arguments. The jury, however, did not even reach the causation issue. Rather, answering special interrogatories, the jury concluded that the BMW vehicle was not defective. Thus, the misconduct did not affect the verdict. This point is reemphasized in the fact that the jury awarded Roth a $5.9 million judgment against Stapleton. Had improper causation arguments influenced

the jury, it would not have returned a verdict in Roth's favor. Thus, the comments during opening statement did not amount to "'irreparable and fundamental error . . . that results in a substantial impairment of justice or denial of fundamental rights such that, but for the misconduct, the verdict would have been different.'" *Grosjean v. Imperial Palace*, 125 Nev. at 364, 212 P.3d at 1079 (quoting *Lioce*, 124 Nev. at 19, 174 P.3d at 982).

## C.

This leaves the two objected-to statements during closing argument to sustain the new trial order.[9] The first statement did not constitute misconduct. All that was said was, "let's look at what the plaintiffs are claiming here and ask the question, did any of these alleged defects cause any injury to Ms. Roth or the accident? Take the seatbelt. It wasn't being worn." Roth's claim was that the seatbelt's failure to restrain her betrayed her legitimate expectations as an ordinary consumer. If she wasn't wearing her seatbelt, this claim was a non-starter. If the court had specifically forbidden this argument, the question would arise of the sanctions appropriate for an attorney's disobedience of an erroneous order in limine, but it didn't. The exchanges up to that point between the court and the parties, as well as the order in limine and associated limiting instruction, did not interdict this argument. Thus, it did not constitute misconduct.

Although the statement was proper, the court struck it. In doing so, it told the jury, "You are instructed to disregard the reference made to the causation of any injuries to the plaintiff with respect to not wearing the seatbelt and any injuries relating to the defect in the seatbelt. This evidence may be used by you only for the purpose of evaluating the claim of defect in the seatbelt *and any injuries relating to the defect in the seatbelt*" (emphasis added).[10]

---

[9]Stapleton and, to a lesser extent, Roth argue that, even if this court rejects the district court's specific findings of attorney misconduct, we should affirm based on other misconduct they contend occurred and the fact that, in their view, the verdict was against the weight of the evidence. Doing so would be contrary to *Lioce*'s requirement of specific oral and written findings of misconduct to facilitate appellate review of orders granting or denying new trials based on attorney misconduct. *See Lioce*, 124 Nev. at 19-20, 174 P.3d at 982. Nevada does not permit the grant of a new trial on the grounds that the verdict was against the weight of the evidence. *Fox v. Cusick*, 533 Nev. 218, 221, 533 P.2d 466, 468 (1975). The additional issues asserted as misconduct were dealt with by the district court as they arose and did not merit a new trial as, indeed, the district court implicitly recognized in settling the form of new trial order.

[10]This instruction highlights the subtleties of the district court's order in limine and the problems in using it as the predicate for a finding of attorney misconduct.

Cereghini's final comment was in the context of describing the seatbelt and B-pillar claims as "red herrings" because "Ms. Roth is ejected from her side window, she was ejected because she was not belted and the . . . ." The court sustained Roth's objection and directed Cereghini to clarify his statement, which he did, stating that because the evidence showed that the seatbelt was not being worn, there was no proof that any defect in the seatbelt caused Roth's injury. Roth did not object. This occurred shortly after the prior admonition and instruction, which the court did not repeat. Given the closeness in time, however, we treat the incident as involving objected-to and admonished misconduct under *Lioce*.

"[F]or objected-to and admonished misconduct, a party moving for a new trial bears the burden of demonstrating that the misconduct is so extreme that the objection and admonishment could not remove the misconduct's effect." *Lioce*, 124 Nev. at 17, 174 P.3d at 981. Roth did not carry that burden here. In closing argument, Roth made clear that the limiting instruction on seatbelt nonuse could not be used to assign fault to Roth. And as discussed earlier, the misconduct did not affect the verdict because the jury found no product defect and did not reach the causation issue. Therefore, the objected-to misconduct did not warrant a new trial because the district court judge's admonishment and instruction sufficiently cured the misconduct.

## IV.

The district court awarded attorney fees and costs to Roth and Stapleton when it granted Roth's motion for new trial based on BMW's counsel's misconduct. Because we reverse the order granting a new trial, we reverse the award of fees and costs as well.

DOUGLAS, C.J., and CHERRY, SAITTA, GIBBONS, HARDESTY, and PARRAGUIRRE, JJ., concur.