JOHN ALLEN LEDBETTER, Appellant, *v.*
THE STATE OF NEVADA, Respondent.

No. 43093

March 16, 2006

129 P.3d 671

*Christopher R. Oram*, Las Vegas, for Appellant.

*George Chanos*, Attorney General, Carson City; *David J. Roger*, District Attorney, and *James Tufteland*, Chief Deputy District Attorney, Clark County, for Respondent.

**OPINION**

By the Court, MAUPIN, J.:

The primary issue before us is whether evidence of uncharged prior acts in a child sexual abuse prosecution may be admissible pursuant to NRS 48.045(2) to show a defendant's motive for committing his crimes.

Appellant John Ledbetter was prosecuted for sexually assaulting his former stepdaughter, L.R. The district court permitted the State to introduce in its case-in-chief evidence that Ledbetter had previously sexually abused his biological daughter, T.B., and his former step-granddaughter, J.M. Ledbetter argues that it was error to admit this evidence because it was unfairly prejudicial and offered only to show that he was a bad person who should be convicted. He also argues that the district court erroneously denied his motion for a mistrial because of a remark made by L.R. during her direct examination that insinuated he had sexually abused one of her friends. We reject both of Ledbetter's arguments.

We conclude that the district court did not abuse its discretion by permitting the State to admit evidence of Ledbetter's uncharged prior sexual abuse of T.B. and J.M. That evidence was admissible pursuant to NRS 48.045(2) to show Ledbetter's motive for sexually assaulting L.R. We also conclude that the district court did not abuse its discretion by denying Ledbetter's mistrial motion. We therefore affirm Ledbetter's conviction.

Our review of the record, however, reveals several errors in the written judgment of conviction, and we remand this appeal to the district court for the limited purpose of making all corrections necessary to that document.

## FACTS

Ledbetter was charged with 26 counts of sexually assaulting L.R. over a ten-year period beginning in 1989 and ending in 1998. His eight-day jury trial began on November 18, 2003. A summary of the evidence admitted at trial follows.

### I. *The State's case-in-chief*

#### A. *Evidence concerning Ledbetter's sexual abuse of L.R.*

L.R. was Ledbetter's former stepdaughter. She testified that she was about five or six years old and in kindergarten in 1989 when Ledbetter began sexually abusing her. While sleeping at home on her parents' bed one night, she awoke in pain to find Ledbetter inserting his fingers inside her vagina. L.R. testified that when she told Ledbetter that she was going to reveal the abuse, "He said that if I told on him he would go to prison and that I would break up the family. And that I'd be really selfish."

A couple of days to a week later a similar incident occurred. Like the first incident, it occurred at night and at home, but this time Ledbetter entered L.R.'s bedroom while she was sleeping. After this second incident, similar instances of abuse occurred about every other night after L.R.'s mother had gone to bed. L.R.'s former step-aunt, and J.M.'s mother, testified that she peeked through an opening in L.R.'s bedroom door one night and observed Ledbetter caress L.R.'s genital area. She did not tell anyone about what she saw.

Although most of the incidents occurred inside the home, L.R. testified that there were occasions when Ledbetter abused her while the two were riding motorcycles in the desert. This abuse continued in the same manner for approximately the next five years.

By 1994, when L.R. was about 11 years old, the frequency of the abuse decreased to "maybe once a week or once a month." L.R. testified that for the next year and a half Ledbetter committed various acts of sexual intercourse, along with oral sex and digital penetration. He also once inserted a foreign object into her vagina. L.R.'s mother testified that she once caught Ledbetter holding a vibrator to L.R.'s belly area. But he explained his behavior to her at the time by saying that L.R. "just wanted to know how it felt." L.R. testified to many other incidents and to ways that Ledbetter had sexually abused her, including masturbating himself while digitally penetrating her.

By 1995, the frequency of the abuse decreased even further to "[m]aybe once a month" and continued for about the next three years. The last incident occurred in 1998 at Mount Charleston, where Ledbetter engaged in sex with L.R. in the back of a pickup truck. L.R., who by this time was 14 years old, eventually disclosed the abuse to a schoolteacher. She was embarrassed, scared, and concerned that she "had just broken my mom's heart." The police were contacted, and ·an investigator who interviewed L.R. testified that at the time she was "very visibly shaken, visibly upset. She was crying."

A physical exam of L.R. was performed by Registered Nurse Phyllis Suiter, who is a licensed sexual assault nurse practitioner. Nurse Suiter testified that her exam was "highly suggestive of sexual abuse or of penetrating injury to the hymen" and was consistent with L.R.'s story and a female who had experienced vaginal penetration since she was nine or ten years old. Dr. Jay Johnson, a physician and professor of pediatrics, testified that he had reviewed Nurse Suiter's exam of L.R. and essentially agreed with her conclusions.

L.R.'s mother testified that when she confronted Ledbetter he started crying and shaking and "kept saying he was sorry." The following day, Ledbetter said to his former brother-in-law, "I screwed up. I'm afraid I'm going to jail. I'd rather die than go to jail. That's why I have to leave no matter what."

Ledbetter later wrote letters to L.R.'s mother, one of which was read into evidence and stated in part:

> I don't know how to even say what's on my heart other than how terribly sorry I really am to have hurt you like I did. I was really stupid and confused. I really wanted to tell so you could help, but I don't think it would have made that much difference because I think either way I still would have been looked at as if I were guilty a hundred percent anyway. And you would most likely still have wanted me out of your life or dead.

### B. *Evidence concerning Ledbetter's sexual abuse of T.B.*

T.B. is Ledbetter's biological daughter from a previous marriage. She testified that she was about ten years old and living with her family in Oregon when she fell asleep on her parents' bed one night and awoke to find her father, Ledbetter, fondling her. Ledbetter engaged in further foreplay and, ultimately, sexual intercourse with the child. T.B. testified that Ledbetter had instructed her "[n]ot to say anything to anybody. It would hurt my mom and split up the family."

A couple of months after this first incident Ledbetter entered T.B.'s bedroom one night while she was sleeping. She awoke to

find him masturbating. Ledbetter thereafter began touching T.B.'s genital area and breasts on a regular basis. Most of these incidents occurred at night and in T.B.'s bedroom.

T.B. recalled that Ledbetter once abused her while he took her driving in the mountains and another time at a drive-in movie. At one point T.B. locked her bedroom door and inserted a blue plastic bottle into her vagina in an attempt to block her father's entry. These incidents occurred over a five-year period until T.B. was 15 years old. T.B. eventually disclosed the abuse to her mother, and her parents divorced.

T.B.'s mother (Ledbetter's former wife) testified that she once caught Ledbetter looking through a window at night watching T.B. take a shower. When T.B.'s mother confronted Ledbetter about the abuse, he admitted to his behavior but blamed it on T.B. The police were never contacted, but T.B.'s mother once warned L.R.'s mother (Ledbetter's second wife) about Ledbetter's behavior.

### C. *Evidence concerning Ledbetter's sexual abuse of J.M.*

J.M. was Ledbetter's former step-granddaughter. She testified that when she was about four or five years old she was living in Ledbetter's home with her parents. J.M. awoke one night to find Ledbetter in her bedroom fondling her. J.M. eventually told her mother that ''grandpa hurt me.'' Nothing came of her disclosure.

## II. *The defense and conviction*

Ledbetter presented one witness in his defense: Dr. Lawrence Ricci, who was the head of a child abuse program in Maine. Based upon his review of L.R.'s physical exam, Dr. Ricci believed that ''there was not clear evidence of trauma to . . . [L.R.'s] hymen.'' He referred to a tear in it as a notch and added that ''some kind of trauma'' could have produced it or it could be normal.

A jury found Ledbetter guilty of all 26 counts charged. On March 16, 2004, the district court sentenced him to 26 terms of life in prison with the possibility of parole in 20 years. The second count was imposed to run consecutively to the first; the remaining counts were to run concurrently. Two days later, however, the district court entered a written judgment that contains errors of both fact and law and substantially differs from its oral pronouncement of Ledbetter's sentence.

## DISCUSSION

### *Admission of prior act evidence*

Ledbetter contends that the district court erred by permitting the State to admit in its case-in-chief evidence of uncharged prior acts

of sexual abuse committed by him upon two other victims, T.B. and J.M. He maintains that this evidence was unfairly prejudicial and offered only to show that he was a bad person who should be convicted. We disagree.

NRS 48.045(2) provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

A district court's decision to admit or exclude evidence under NRS 48.045(2) rests within its sound discretion and will not be reversed on appeal absent manifest error.[1]

"A presumption of inadmissibility attaches to all prior bad act evidence."[2] The principal concern with admitting this type of evidence is that the jury will be unduly influenced by it and convict a defendant simply because he is a bad person.[3] The presumption of inadmissibility may be rebutted when prior to the admission of this evidence the district court conducts a hearing outside the presence of the jury and finds that the following three factors set forth in *Tinch v. State* are satisfied: the evidence is relevant, it is clear and convincing, and its probative value is not substantially outweighed by the danger of unfair prejudice.[4] Although a hearing is required, the failure to hold a proper hearing below and make the necessary findings will not mandate reversal on appeal if " '(1) the record is sufficient for this court to determine that the evidence is admissible under the test for admissibility of prior bad act evidence . . . ; or (2) where the result would have been the same if the trial court had not admitted the evidence.' "[5]

Here, the district court held three pretrial hearings regarding the admissibility of the prior act evidence. T.B. and her mother, as well as J.M., testified during these hearings. The district court did not make express findings on the record during these hearings with respect to the three-factor test for admissibility. Rather, it simply

---

[1]*Braunstein v. State*, 118 Nev. 68, 72, 40 P.3d 413, 416 (2002).

[2]*Rosky v. State*, 121 Nev. 184, 195, 111 P.3d 690, 697 (2005).

[3]*Walker v. State*, 116 Nev. 442, 445, 997 P.2d 803, 806 (2000).

[4]113 Nev. 1170, 1176, 946 P.2d 1061, 1064-65 (1997).

[5]*Rhymes v. State*, 121 Nev. 17, 22, 107 P.3d 1278, 1281 (2005) (quoting *Qualls v. State*, 114 Nev. 900, 903-04, 961 P.2d 765, 767 (1998)).

found during the final hearing that Ledbetter's prior abusive acts were ''so similar'' to the alleged abuse of L.R. that they would be admitted.

An instruction limiting the use of the evidence was given to the jury prior to deliberations and provided that the evidence was admissible to show that Ledbetter acted under a common scheme or plan or, alternatively, to show his intent or the absence of mistake or accident on his part. The State on appeal not only argues that the prior act evidence was admissible based upon the above three exceptions under NRS 48.045(2), but adds the exceptions of motive and modus operandi.

Because we will affirm a district court's correct decision to admit evidence, even if it gave an incorrect reason for doing so,[6] the fundamental question before us is under what exception pursuant to NRS 48.045(2), if any, was the prior act evidence admissible. We turn to these exceptions.

The modus operandi exception is generally ''proper in 'situations where a positive identification of the perpetrator has not been made, and the offered evidence establishes a signature crime so clear as to establish the identity of the person on trial.' ''[7] Ledbetter's identity was not at issue during trial, and we reject the State's argument that the prior act evidence was admissible under this exception. Whether Ledbetter's actions were the result of an accident, mistake or unintentional conduct also do not appear at issue in this case, and we also reject the State's reliance upon these exceptions as a basis for admission. The exceptions of motive and common scheme or plan, however, warrant more detailed discussions.

*Common scheme or plan*

The common scheme or plan exception of NRS 48.045(2) is applicable when both the prior act evidence and the crime charged constitute an '' 'integral part of an overarching plan explicitly conceived and executed by the defendant.' ''[8] '' 'The test is not whether the other offense has certain elements in common with the crime

---

[6]*Browne v. State*, 113 Nev. 305, 312, 933 P.2d 187, 191 (1997).

[7]*Rosky*, 121 Nev. at 197, 111 P.3d at 698 (quoting *Mortensen v. State*, 115 Nev. 273, 280, 986 P.2d 1105, 1110 (1999)).

[8]*Id.* at 196, 111 P.3d at 698 (quoting *Richmond v. State*, 118 Nev. 924, 933, 59 P.3d 1249, 1255 (2002) (other internal quotations and citations omitted)).

charged, but whether it tends to establish a *preconceived plan* which resulted in the commission of that crime.' ''[9]

Here, the evidence of Ledbetter's uncharged sexual abuse of T.B. and J.M. showed numerous similarities with the charged abuse of L.R. For example, all three victims were young female members of Ledbetter's family, the initial abuse all occurred at night while they were asleep, and he performed many of the same types of acts, employing similar methods.

However, the State has failed to show that Ledbetter's abuse of these three victims was all part of an overarching and explicitly preconceived plan. Some of his acts were separated by several years, occurred in different states, and are most appropriately viewed as resulting from random opportunities by which he had access to L.R. and J.M. in his new family arrangement, after his original family that included T.B. dissolved. We therefore conclude that the prior act evidence was inadmissible under the common scheme or plan exception.[10] But as we explain below, we conclude that this evidence was admissible to show Ledbetter's motive.

### Motive

In recent years this court has discussed at some length the motive exception of NRS 48.045(2) as a basis to admit evidence of uncharged prior acts in child abuse prosecutions. In 2002, this court's en banc decision in *Braunstein v. State* rejected a line of cases that stood for the proposition that evidence of other acts offered to prove ''a specific emotional propensity for sexual aberration'' is always relevant to a defendant's intent and outweighs the danger of unfair prejudice as a matter of law.[11] This court returned in *Braunstein* to the principle of analyzing the admissibility of prior act evidence ''according to the parameters of NRS 48.045(2),'' which involved satisfying the three factors for admissibility.[12]

Later that year, this court en banc attempted to apply *Braunstein* in the case *Richmond v. State* and divided on when the motive exception of NRS 48.045(2) may be relied upon to admit prior act evidence in child abuse prosecutions.[13] Three opinions resulted, but

---

[9]*Id.*

[10]*See Richmond*, 118 Nev. at 933-34, 59 P.3d at 1255; *id.* at 937 n.12, 59 P.3d at 1257 n.12 (MAUPIN, J., concurring in part and dissenting in part); *Rosky*, 121 Nev. at 196, 111 P.3d at 698.

[11]118 Nev. at 75, 40 P.3d at 418 (abrogating *McMichael v. State*, 94 Nev. 184, 577 P.2d 398 (1978), and overruling *Findley v. State*, 94 Nev. 212, 577 P.2d 867 (1978)).

[12]*Id.*

[13]*Richmond*, 118 Nev. 924, 59 P.3d 1249.

a four-justice majority of this court agreed that motive could be a valid basis for admission of prior act evidence in child abuse prosecutions to show a defendant's attraction to or obsession with his victims.[14] It was explained:

> Evidence of separate acts of pedophilia or other forms of sexual aberration are not character evidence, but are admissible for the "other purpose" [under NRS 48.045(2)] of explaining why a crime of sexual deviance was committed. The mental aberration that leads a person to commit a sexual assault upon a minor child, while not providing a legal excuse to criminal liability, does explain why the event was perpetrated.[15]

It therefore remains the law in Nevada that "whatever might 'motivate' one to commit a criminal act is legally admissible to prove 'motive' under NRS 48.045(2)," so long as the three-factor test for admissibility is satisfied.[16]

Here, that test is satisfied under the particular facts of this case. What motivated Ledbetter to sexually abuse L.R. was relevant to the State's prosecution, and the evidence of his prior acts of abuse of T.B. and J.M. established that motive. Coming from four witnesses, T.B., T.B.'s mother, J.M., and J.M.'s mother, this prior act evidence was also shown to be clear and convincing. The only question remaining is whether the evidence's probative value was substantially outweighed by the danger of unfair prejudice to Ledbetter. It was not.

---

[14]*Id.* at 937, 59 P.3d at 1257-58 (MAUPIN, J., concurring in part and dissenting in part); *id.* at 942, 59 P.3d at 1261 (SHEARING, J., concurring in part and dissenting in part, with whom YOUNG, C. J., and AGOSTI, J., agreed). *But cf. id.* at 932-34, 59 P.3d at 1254-56 (plurality opinion by ROSE, J., with whom BECKER and LEAVITT, JJ., agreed).

[15]*Id.* at 939 n.14, 59 P.3d at 1259 n.14 (MAUPIN, J., concurring in part and dissenting in part).

[16]*Id.* at 937, 59 P.3d at 1258; *see also id.* at 942-43, 59 P.3d at 1260-61 (SHEARING, J., concurring in part and dissenting in part); *Rosky*, 121 Nev. at 196-98, 111 P.3d at 698-99. In *Rosky*, the defendant was convicted of sexual assault and indecent exposure, both of which involved a minor. *Id.* at 189, 111 P.3d at 693-94. In that appeal, like this one, this court reviewed the admission of the prior act evidence by the district court according to the parameters of NRS 48.045(2) and the three-factor test. *Id.* at 194-98, 111 P.3d at 697-99. Unlike our conclusion today, we concluded in *Rosky* that the prior act evidence was unfairly prejudicial, particularly given improper arguments by the prosecutor inviting the jury to use it as evidence of the defendant's bad character. *Id.* at 197-98, 111 P.3d at 698-99; *see also Richmond*, 118 Nev. at 938, 58 P.3d at 1258 (MAUPIN, J., concurring in part and dissenting in part). Paramount to this court's decision in *Rosky*, like our decision today, was the nature and quantity of the evidence supporting the defendant's conviction beyond the prior act evidence itself.

The probative value of explaining to the jury what motivated Ledbetter, an adult man who was in a position to care for and protect his young stepdaughter L.R. from harm, to instead repeatedly sexually abuse her over so many years was very high. The evidence of Ledbetter's prior acts of sexual abuse of T.B. and J.M. showed Ledbetter's sexual attraction to and obsession with the young female members of his family, which explained to the jury his motive to sexually assault L.R.

In other cases,[17] use of such prior act evidence bolstered otherwise relatively weak charges against those defendants, heightening the likelihood of unfair prejudice. Such concerns are not present here.

Even excluding the uncharged prior act evidence of Ledbetter's sexual abuse of T.B. and J.M., the remaining direct and circumstantial evidence admitted against him overwhelmingly supported his conviction for sexually assaulting L.R.[18] Particularly, this evidence included the following: the testimony of the victim, L.R.; the testimony of Nurse Suiter, who examined L.R. and found evidence highly suggestive of sexual abuse, as well as photography from that examination; the affirmation of Nurse Suiter's conclusion by the testimony of Dr. Johnson; the testimony of L.R.'s former step-aunt and J.M.'s mother, who once observed Ledbetter abusing L.R. in her bedroom one night; the testimony of L.R.'s mother, who once observed Ledbetter hold a vibrator to L.R.'s belly area; the testimony of Ledbetter's former brother-in-law about Ledbetter's statement that he was going to prison after L.R. disclosed the abuse to her mother; and the letter written by Ledbetter to L.R.'s mother that contained emphatic apologies for his behavior and implied admissions of guilt.

Given the overall strength of the State's case against Ledbetter, we conclude that the danger that the admission of this evidence was unfairly prejudicial was minimal. Any failure by the district court to fully explain its findings on the required factors prior to the admission of this evidence and any error in admitting the evidence under a different NRS 48.045(2) exception were therefore harmless

---

[17]*See Richmond*, 118 Nev. at 934, 59 P.3d at 1255-56; *id.* at 938, 59 P.3d at 1258 (MAUPIN, J., concurring in part and dissenting in part); *Rosky*, 121 Nev. at 197, 111 P.3d at 698.

[18]*See LaPierre v. State*, 108 Nev. 528, 531, 836 P.2d 56, 58 (1992) ("[T]he testimony of a sexual assault victim alone is sufficient to uphold a conviction."); *McNair v. State*, 108 Nev. 53, 61, 825 P.2d 571, 576 (1992) ("Circumstantial evidence alone may sustain a conviction.").

beyond a reasonable doubt.[19] We conclude that the district court did not abuse its discretion by admitting the prior act evidence pursuant to NRS 48.045(2) because this evidence was admissible to show Ledbetter's motive for sexually assaulting L.R.[20]

In reaching this conclusion, however, we caution the State that our decision is dependent upon the particular facts of this case and that the use of prior act evidence to establish motive pursuant to NRS 48.045(2) should always be approached with circumspection.[21] This court's jurisprudence in *Braunstein* and *Richmond* requires that the admissibility of prior act evidence must always be determined under the three-factor test articulated in *Tinch*. Our decision today continues to adhere to this view.

## Motion for a mistrial

Ledbetter also contends that the district court improperly denied his motion for a mistrial after L.R. made a remark during her direct examination testimony that insinuated that he had committed an act of sexual abuse upon one of her friends. We disagree.

The decision to deny a motion for a mistrial rests within the district court's discretion and will not be reversed on appeal "absent a clear showing of abuse."[22] Moreover, "[a] witness's spontaneous or inadvertent references to inadmissible material, not solicited by

---

[19]*See Richmond*, 118 Nev. at 934, 59 P.3d at 1255-56.

[20]Because we conclude that the prior act evidence was admissible to show Ledbetter's motive, we will not address intent.

[21]Our review of the record reveals that the district court failed to orally give instructions to the jury limiting the use of the prior act evidence before the testimony of each witness. Although Ledbetter does not raise this issue, the district court's failure was error, *Tavares v. State*, 117 Nev. 725, 731-33, 30 P.3d 1128, 1131-33 (2001), and we reaffirm our holding that when a district court admits prior act evidence, a limiting instruction should be given to the jury both at the time of admission and again when the case is submitted to the jury for deliberations. *Rhymes*, 121 Nev. at 23-24, 107 P.3d 1281-82.
Here, the State did discuss the limited use of the prior act evidence during its opening and closing arguments to the jury, and as previously discussed, the district court gave the jury a limiting instruction prior to deliberations. Deficient limiting instructions are a factor this court has considered when analyzing the admissibility of prior act evidence. *See Rosky*, 121 Nev. at 197, 111 P.3d at 697-99. Given the overwhelming evidence of Ledbetter's guilt as discussed above, we conclude that this error did not have a " 'substantial and injurious effect or influence in determining the jury's verdict' " and was harmless. *See Tavares*, 117 Nev. at 732, 30 P.3d at 1132 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

[22]*Randolph v. State*, 117 Nev. 970, 981, 36 P.3d 424, 431 (2001).

the prosecution, can be cured by an immediate admonishment directing the jury to disregard the statement."[23]

Here, assuming that L.R.'s remark was inadmissible, the district court found that it was not solicited by the prosecutor and promptly admonished the jury to disregard it. The remark was isolated, and we conclude that any prejudice flowing from it was adequately cured by the district court.

Ledbetter has therefore failed to clearly demonstrate that the district court abused its discretion by denying his mistrial motion. He is not entitled to relief on this basis.

### Errors in the written judgment

Our review of the record reveals several errors in the written judgment of conviction. We take this opportunity to express our concern respecting the increasing number of clerical errors appearing in written judgments of conviction filed in the district courts.

The written judgment of conviction is an essential document in a criminal proceeding because it memorializes a defendant's conviction, his crime, and the terms of his sentence.[24] Its required contents are set forth by statute[25] and are relied upon by other courts long after the proceedings before the district court have passed. It is therefore critical that the written judgment contain accurate information. The district judge's signature on the document is required to ensure that it does so.[26]

Yet written judgments containing errors are being presented to this court with increasing frequency. These clerical errors often concern basic, but vital, information, such as whether a defendant was convicted pursuant to a jury verdict or a guilty plea. And they appear to be the result of nothing more than inattentive drafting that could be easily avoided by a more careful review of the document below. Such errors needlessly inject uncertainty into criminal proceedings and their correction constitutes a waste of judicial resources. The written judgment in this case illustrates but one example of our concern and contains three errors that we must address.

First, the written judgment states that Ledbetter's conviction was the result of a guilty plea. This is incorrect. Ledbetter was convicted pursuant to a jury verdict.

---

[23]*Carter v. State*, 121 Nev. 759, 770, 121 P.3d 592, 599 (2005).

[24]*See generally Ex parte Dela*, 25 Nev. 346, 350-51, 60 P. 217, 219 (1900).

[25]*See* NRS 176.105(1).

[26]*See* NRS 176.105(3).

Second, the written judgment states that Ledbetter was sentenced to life in prison with the possibility of parole in five years for each of the 26 sexual assault counts. Yet the official transcript of Ledbetter's March 16, 2004, sentencing hearing reveals that the district court orally pronounced a sentence of 26 terms of life in prison with the possibility of parole in 20 years for each of the counts. The sentence within the written judgment not only differs substantially from the oral pronouncement of Ledbetter's sentence, but it is incorrect as a matter of law. NRS 200.366 sets forth the possible penalties for the crime of sexual assault on a minor and has been amended several times since 1989,[27] which is the year Ledbetter's abuse of L.R. first began. Depending upon the dates of the offenses, the resulting bodily harm, and the age of the victim, that statute has provided for various terms of imprisonment. None of these terms, however, allowed for a sentence of life in prison with the possibility of parole after five years under the facts of this case.

Finally, the written judgment states that the prison terms for all 26 counts were imposed to run concurrently to one another. Yet the official transcript of Ledbetter's sentencing hearing reveals that the district court orally announced that count two would run consecutively to count one. Although a district court may modify an oral pronouncement of a defendant's sentence in a subsequent written judgment,[28] there is no indication in the record before us that the district court intended to do so in this case. Thus, we are uncertain whether the discrepancy between the oral pronouncement of Ledbetter's sentence and the written judgment was the result of oversight.[29] We therefore remand this matter for the limited purpose of correcting or clarifying these errors and discrepancies in the written judgment.[30]

## CONCLUSION

Motive may be a basis to admit evidence of a defendant's uncharged prior acts pursuant to NRS 48.045(2) in a child abuse prosecution. We conclude that the district court did not abuse its

[27]See 1997 Nev. Stat., ch. 314, § 3, at 1179-80; id. ch. 455, § 1, at 1719-20; 1995 Nev. Stat., ch. 443, § 58, at 1186-87; 1991 Nev. Stat., ch. 250, § 1, at 612-13.

[28]See Bradley v. State, 109 Nev. 1090, 1094-95, 864 P.2d 1272, 1274-75 (1993); Miller v. Hayes, 95 Nev. 927, 929, 604 P.2d 117, 118 (1979).

[29]See McCall v. State, 97 Nev. 514, 517, 634 P.2d 1210, 1212 (1981).

[30]See NRS 176.565 ("Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders.").

discretion by permitting the State to introduce this type of evidence in its case-in-chief against Ledbetter because it was admissible on this basis, and any associated error in doing so was harmless beyond a reasonable doubt. We also conclude that the district court did not abuse its discretion by denying Ledbetter's mistrial motion. His conviction is affirmed.

However, we remand this matter to the district court for the limited purpose of correcting or clarifying any clerical errors in the written judgment of conviction.

GIBBONS, DOUGLAS, HARDESTY and PARRAGUIRRE, JJ., concur.

ROSE, C. J., with whom BECKER, J., agrees, dissenting:

The majority expands the definition of "motive" contained in NRS 48.045(2) to permit prior sexual bad acts to show Ledbetter is a pervert. The admission of these prior bad acts is based on a more legally recognized ground and it is preferable to me over admitting the evidence to show a "sexual aberration." But the end result is the same—evidence of prior sexual acts is permitted to show the defendant's character and that he is a pervert. And the evidence is so prejudicial to the defendant, I cannot see how it can be determined more probative than prejudicial when we are dealing with a collateral event and explosive evidence against the defendant.

However, I am pleased to see that we will now be receiving this highly prejudicial evidence under a more appropriate legal exception to the general rule that prohibits character evidence and the admission of prior bad acts.