# IN THE SUPREME COURT OF THE STATE OF NEVADA

JERBY ALBERTO REYES,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 67239

FILED

DEC 23 2016

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF REVERSAL AND REMAND

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of two counts each of sexual assault of a minor under the age of 14 years and sexually motivated coercion. Eighth Judicial District Court, Clark County; James M. Bixler, Judge.

In 2006, it was alleged that appellant Jerby Reyes anally penetrated the nine-year-old daughter of his then-girlfriend. The alleged assault was not reported to police until 2011 when the child told a friend about the assault, who then told a teacher. However, the State declined to prosecute Reyes because of a lack of sufficient evidence to proceed.

In 2012, it was alleged that Reyes digitally penetrated the vagina of a four-year-old daughter of a friend. After the claimed assault was reported to the police, the State reopened the 2006 case. The State subsequently charged Reyes with counts relating to both assaults.

Reyes filed a motion to sever the trials of the two assaults. The district court denied Reyes's motion on the grounds that evidence of the separate crimes would be cross-admissible in their separate trials as bad acts. Reyes also moved to admit evidence of the prior sexual conduct

of both alleged victims and to compel a psychological examination of one of the victims. The district court denied both motions.

After a seven day trial, the jury found Reyes guilty on all counts. Reyes filed a motion for a judgment of acquittal or, in the alternative, a new trial, which the district court denied.

Reyes now appeals and raises the following issue: whether the district court abused its discretion by refusing to sever the charges.[1]

*The district court abused its discretion by failing to sever the counts*

Reyes argues that the counts charged were not part of a common scheme or plan pursuant to NRS 173.115, were not cross-admissible as prior bad acts, and that the prejudice from joinder outweighed the benefits of judicial economy.

"The decision to join or sever charges is within the discretion of the district court, and an appellant carries the heavy burden of showing that the court abused that discretion." *Weber v. State*, 121 Nev. 554, 570, 119 P.3d 107, 119 (2005). "Criminal charges are properly joined

---

[1]Reyes also argues that the district court abused its discretion by (1) refusing to allow an independent psychological examination of the 2006 victim, (2) refusing to admit evidence of the 2006 victim's prior sexual history, and (3) denying Reyes's motion for a new trial based on conflicting evidence. Reyes further argues that there was insufficient evidence to uphold his conviction and cumulative error warrants reversal. Because the issue of severance is dispositive, we need not reach these additional issues raised by Reyes on appeal, with the exception of Reyes's insufficiency of the evidence argument. On this issue, we hold that there was sufficient evidence to uphold Reyes's conviction on all counts. *Nolan v. State*, 122 Nev. 363, 377, 132 P.3d 564, 573 (2006) (stating that evidence is sufficient where "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (internal quotations omitted)).

whenever: (1) the acts leading to the charges are part of the same transaction, scheme, or plan or (2) the evidence of each charge would be admissible in the separate trial of the other charge." *Zana v. State*, 125 Nev. 541, 549, 216 P.3d 244, 249 (2009).

*The crimes were not part of a common scheme or plan*

"Determining whether a common scheme or plan existed in this, or any, case requires fact-specific analysis. And such analysis depends on the meaning of the pertinent statutory language 'scheme or plan'" used in NRS 173.115(2). *Weber*, 121 Nev. at 572, 119 P.3d at 119. This court determined that "a scheme is a design or plan formed to accomplish some purpose; a system. A plan is a method of design or action, procedure, or arrangement for accomplishment of a particular act or object. Method of putting into effect an intention or proposal." *Id.* at 572, 119 P.3d at 119-20 (footnote and internal quotations omitted). Thus, a common plan or scheme "requires that each crime . . . be an integral part of an overarching plan explicitly conceived and executed by the defendant." *Richmond v. State*, 118 Nev. 924, 933, 59 P.3d 1249, 1255 (2002) (internal quotations omitted). "The test is not whether the other offense has certain elements in common with the crime charged, but whether it tends to establish a *preconceived plan* which resulted in the commission of that crime." *Id.* (internal quotations omitted).

Here, there is no evidence that each alleged sexual assault was "an integral part of an overarching plan explicitly conceived and executed by" Reyes. *Id.* (internal quotations omitted). In the 2006 case involving his former girlfriend's daughter, Reyes had been living with his then-girlfriend and her nine-year old daughter, S.M., for about one year. Reyes entered S.M.'s bedroom one night, asked her to sit on his lap, and

anally penetrated her with his penis. S.M. later testified that Reyes smelled like he had been drinking that night.

Conversely, in the 2012 case involving his friend's daughter, Reyes initially targeted his friend's wife, A.L. On the day of the alleged assault, Reyes's friend, N.L, had seen Reyes drinking at a car wash. N.L. took Reyes's children home with him because they wanted to see N.L.'s puppies. Reyes arrived at N.L.'s house later to pick his children up, but his truck did not start when he tried to leave. Reyes then asked N.L. to take his children to Reyes's house.

While N.L. was gone, A.L. made Reyes some food after Reyes told her he was hungry, and then went into the children's room because Reyes was following her. Reyes followed her into the room, so A.L. left and went into her bedroom with her youngest daughter. Reyes soon after appeared in the doorway of A.L.'s room. A.L. tried to shut the door to keep him out of the room, but Reyes kept pushing the door open.

Reyes told A.L. that she was pretty, and followed her into the bedroom. She tried to push Reyes out of the bedroom, but he pushed through the door and told A.L. that he loved her. Reyes began to hug A.L., grabbed at her buttocks, and even bit her cheek when she turned away as he tried to kiss her. Reyes then tried moving A.L. to the bed, but finally backed off when A.L.'s youngest child entered the bedroom and fell off a chair.

Reyes left A.L.'s bedroom and went to go watch television in the children's room with A.L.'s children. A.L. stayed in her bedroom because she was scared, but assumed Reyes would not harm her children. While in the room, Reyes told one of the children to go check his truck. While the child left to go check on the truck, Reyes and J.L., A.L.'s four-

year-old daughter, were left alone on the bed, and Reyes touched inside her underwear and digitally penetrated her vagina with his finger. Reyes eventually got up and left.

Thus, the facts do not suggest that Reyes had a preconceived plan in which he would isolate the children and sexually assault them. Indeed, they suggest that Reyes actually lacked a plan. In the 2006 incident, Reyes targeted his girlfriend's daughter one night after drinking. In the 2012 incident, Reyes targeted his friend's wife, and only moved on to his friend's daughter after his friend's wife managed to get Reyes out of the bedroom. It is unlikely that Reyes had the preconceived plan of attempting to assault one person in order to isolate a child he wanted to sexually assault. Therefore, the assaults appear to have been "independent crimes, which [Reyes] did not plan until each victim was within reach." *See id.* at 934, 59 P.3d at 1255.

Accordingly, we hold that the two crimes did not evince a common scheme or plan.

*The evidence of each charge would not be admissible in the separate trial of the other charge*

Generally, evidence of other criminal acts by a defendant are not admissible at trial. *See Elsbury v. State,* 90 Nev. 50, 52, 518 P.2d 599, 601 (1974). As NRS 48.045(2) provides: "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." The statute does allow evidence of other acts, however, where it is "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

*Motive*

The State argues that evidence of the separate assaults would be admissible to prove motive, relying on this court's decision in *Ledbetter v. State*, 122 Nev. 252, 129 P.3d 671 (2006). In *Ledbetter*, evidence of prior bad acts of child abuse against two family members was admissible to show the defendant's "sexual attraction to and obsession with the young female members of his family, which explained to the jury his motive to sexually assault" a third family member. *Id.* at 263, 129 P.3d at 679.

*Ledbetter* is distinguishable from the current case. In *Ledbetter*, the victims in all three crimes were very similar in that they were all young female members of Ledbetter's family. Thus, the probative value of the prior bad acts to establish motive was relatively high. Here, as discussed earlier, the circumstances underlying the two victims' allegations are not similar. The assaults charged occurred at different locations, under different circumstances, and the acts themselves were different. Furthermore, the facts involved in the assault of Reyes's friend's child suggest that Reyes had a sexual attraction and possible obsession with his friend's wife, not with the child. Thus, the probative value of the prior bad acts to establish motive is distinguishable from that in *Ledbetter*. *See id.*

*Res gestae*

The State argues that evidence of the 2012 assault would be admissible in the trial of the 2006 assault as res gestae evidence because it is impossible to explain to the jury why the State waited so long to prosecute the 2006 assault without referring to the 2012 assault.

NRS 48.035(3) governs the admission of res gestae evidence. That statute provides as follows:

> [T]he State is entitled to present a full and accurate account of the circumstances surrounding the commission of a crime, and such evidence is admissible even if it implicates the accused in the commission of other crimes for which he has not been charged. *However, in order to use the complete story of the crime doctrine, the crime must be so interconnected to the act in question that a witness cannot describe the act in controversy without referring to the other crime.*

*Bletcher v. State*, 111 Nev. 1477, 1480, 907 P.2d 978, 980 (1995) (alteration in original) (emphasis added) (internal quotations omitted). Therefore, "the 'complete story of the crime' doctrine must be construed narrowly." *Bellon v. State*, 121 Nev. 436, 444, 117 P.3d 176, 181 (2005).

Here, a witness would be able to describe almost every aspect of the 2006 assault without referring to the second. The only aspect that the State may not be able to describe is why it did not initially charge Reyes with the 2006 assault. Even in that instance, the existence of the 2012 assault, which led to the State filing charges in the 2006 assault, could be referred to obliquely to explain the delay in filing charges. Certainly, the details of the 2012 assault would not be admissible, as the only relevant information would be the *existence* of the assault, not the prejudicial details of *how* it occurred.

Furthermore, the State's argument focuses solely on whether evidence of the 2012 assault would be admissible in the 2006 assault. However, in order for joinder to be proper, the evidence of the 2006 assault would also have to be admissible in a trial of the 2012 assault. *See Zana*, 125 Nev. at 549, 216 P.3d at 249 (holding that for joinder to be proper, "the evidence of *each* charge would be admissible in the separate trial of the *other* charge" (emphases added)). Here, even if evidence of the 2012 assault was admissible as necessary res gestae evidence in a trial of the

2006 assault, evidence of the 2006 assault would not be admissible in a trial of the 2012 assault. Therefore, we hold that evidence of each crime would not be admissible as res gestae evidence in the other crime, and that the district court abused its discretion by refusing to sever the counts.

*The error was not harmless*

"Error resulting from misjoinder of charges is harmless unless the improperly joined charges had a substantial and injurious effect on the jury's verdict." *Weber*, 121 Nev. at 570-71, 119 P.3d at 119. In *Floyd v. State*, this court discussed the types of prejudice that can result from the joinder of charges:

> The first kind of prejudice results when the jury considers a person facing multiple charges to be a bad man and tends to accumulate evidence against him until it finds him guilty of something. The second type of prejudice manifests itself when proof of guilt on the first count in an information is used to convict the defendant of a second count even though the proof would be inadmissible at a separate trial on the second count. The third kind of prejudice occurs when the defendant wishes to testify on his own behalf on one charge but not on another.

118 Nev. 156, 164, 42 P.3d 249, 255 (2002) (quotation omitted), *abrogated on other grounds by Grey v. State*, 124 Nev. 110, 178 P.3d 154 (2008).

Here, the only evidence of the 2006 assault was the testimony of the victim. The State clearly did not believe that the victim's testimony alone was sufficient as it declined to prosecute the first-charged assault because of a lack of sufficient evidence to proceed. By trying the 2006 assault with the 2012 assault, however, the district court made it significantly more likely that the jury would convict Reyes on the 2006 assault because a jury could use the evidence offered to prove one assault

to bolster their belief that Reyes also committed the other assault. *See id.* Therefore, we hold that the district court's error was not harmless.

Accordingly, we

ORDER the judgment of conviction REVERSED AND REMAND this matter to the district court for proceedings consistent with this order.

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Pickering

cc:     Eighth Judicial District Court, Department 24
        Las Vegas Defense Group, LLC
        Attorney General/Carson City
        Clark County District Attorney
        Eighth District Court Clerk