# IN THE SUPREME COURT OF THE STATE OF NEVADA

JUSTIN ODELL LANGFORD,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 70536

FILED

JUN 27 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of lewdness with a child under the age of 14. Eighth Judicial District Court, Clark County; Susan Johnson, Judge.

On January 21, 2014, H.H. disclosed to a school nurse's assistant that appellant Justin Odell Langford, her step-father, was sexually abusing her. Based on H.H.'s allegations, Las Vegas Metropolitan Police Department (LVMPD) detectives arrested Langford at his residence later that day. Pursuant to a search warrant for Langford's residence, LVMPD investigators recovered bedding and a white rag and bottle of baby oil in his dresser. These items were tested for DNA, and a mixture found on the white towel was consistent with the DNA of Langford and H.H. Langford was subsequently charged with three counts of sexual assault with a minor under 14, eight counts of lewdness with a child under the age of 14, and one count of child abuse, neglect or endangerment.

At a preliminary hearing, Langford learned that H.H. received counseling because of the abuse. Langford filed a pretrial motion to compel production of H.H.'s psychiatric records. The district court denied Langford's motion.

17-21219

At trial, the jury heard testimony from, among other witnesses, Shaylene, H.H.'s mother; Leslie, H.H.'s grandmother; and Christy, the nurse's assistant at H.H.'s school. During Shaylene's testimony, the State asked about her relationship with Langford. Shaylene responded, "It was rocky. And then some things happened and he got on medication and it got better for [a] while." Langford's attorney objected, and the jury was instructed "to disregard that last remark about medication."

During Leslie's testimony, the State asked about her interactions with Langford. Leslie stated the interactions were "[n]ot very good" in tone, and referenced a message he left on her cell phone in which he made a few threats. Langford's attorney requested a bench conference, and objected to Leslie's use of the term "threats." The attorneys further questioned Leslie outside the presence of the jury, and ultimately determined Langford had made a demand, not a threat. Langford's attorney, the State, and the district court agreed that the State would simply clarify Leslie's testimony to characterize Langford's voice message as a demand, and that the district court needed not instruct the jury.

At another point during Leslie's testimony, the State asked about a picture of H.H. Leslie indicated the picture was of H.H. when she was about nine years old, and that it was taken at an Easter egg hunt. The district court allowed the photo to be admitted into evidence over Langford's attorney's objection.[1] When the State asked whether the hunt

---

[1]Earlier that morning, before the State began to present its case, Langford's attorney objected to this and other photos of H.H., arguing that they were not relative or probative to whether Langford committed the charged crimes, and were being used "just to arouse sympathy and passion with the jury." The district court found one picture of H.H. holding an

was a community event, Langford's attorney objected on relevance grounds. The State responded that it was laying foundation, and the district court overruled the objection. At the next break, Langford's attorney readdressed the Easter egg hunt objection, and also raised an objection to Leslie commenting under her breath, while looking at the photo: "She was so cute." Langford's attorney moved for a mistrial, explaining she "did not say anything about this at the time it happened [because she] didn't want to call more attention to it," but that Leslie's comment was "clearly inflammatory" and "prey[ed] on [the jurors'] emotions," which was why she objected to the photos to begin with. The district court denied the motion for mistrial.

During Christy's testimony, the State asked what H.H. disclosed about physical abuse. Christy responded, "Her head was hit and that someone almost broke her mom's arm." Langford's attorney objected, and the district court admonished the jury "to disregard any remarks about a broken arm." Because Langford and the State agreed prior to trial to avoid any mention of the broken arm, Langford's attorney again addressed Christy's testimony after the jury was sent home for the day. Langford's attorney again moved "for a mistrial based on the multiple times that things have come in inadvertently that shouldn't have come in." The district court ultimately denied Langford's renewed motion for mistrial, but indicated it was concerned and that it would seriously consider granting a mistrial if any of the State's remaining witnesses made improper statements.

---

Easter basket to be more prejudicial than probative, but stated the State could introduce the other photos with a proper foundation.

Ultimately, Langford was found guilty on one count of lewdness with a child under the age of 14, but was found not guilty on all other counts. Langford was sentenced to life with a possibility of parole after 10 years, and subsequently filed the instant appeal.

*The district court did not err in denying Langford's motion to compel H.H.'s psychiatric records because the records were privileged and in possession of a third party*

Langford first argues the district court erred in denying his motion to compel H.H.'s psychiatric records, as this evidence was required to be disclosed pursuant to the Sixth Amendment, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and *United States v. Bagley*, 473 U.S. 667 (1985). We disagree.

*There was no violation under Brady or Giglio*

Under *Brady*, prosecutorial suppression of exculpatory evidence is a violation of due process "where the evidence is material either to guilt or to punishment." 373 U.S. at 87. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. This court considers three factors when examining a potential *Brady* violation: whether the evidence at issue (1) was favorable to the defendant; (2) was inadvertently or intentionally withheld; and (3) was material and, therefore, prejudice occurred. *Mazzan v. Warden*, 116 Nev. 48, 67, 993 P.2d 25, 37 (2000). Because impeachment evidence constitutes "evidence favorable to an accused," *Bagley*, 473 U.S. at 676, it also falls within the *Brady* rule. *Giglio*, 405 U.S. at 154. Whether a *Brady* violation occurred is reviewed de novo. *Mazzan*, 116 Nev. at 66, 993 P.2d at 36.

Here, this court need not determine whether the records are material because Langford has failed to show that H.H.'s medical records were favorable to his defense—e.g., that they contain impeachment evidence, or that they were suppressed by the State. Indeed, the State indicates the records were not in its possession. Nonetheless, the other witnesses' testimony and corroborating DNA evidence suggest the outcome of the proceeding would not have been different even if Langford were to have impeached H.H.'s testimony. *Cf. Giglio*, 405 U.S. at 154-55 (reasoning that nondisclosure by the government of evidence relevant to the co-conspirator's credibility would have affected the outcome of the trial where the government's case depended almost entirely on the co-conspirator's testimony). Because Langford has not demonstrated that the State or other investigating agency of the government had possession of H.H.'s psychiatric records or knowledge of their contents, and the State cannot produce or suppress evidence it does not have within its possession or control, we conclude the failure to provide those records to the defense did not violate *Brady* or *Giglio*. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987) ("It is wellsettled that the government has the obligation to turn over evidence *in its possession* that is both favorable to the accused and material to guilt or punishment." (emphasis added)); *United States v. Blanco*, 392 F.3d 382, 393-94 (9th Cir. 2004) (explaining that the obligation under *Brady* and *Giglio* applies to the prosecutor and investigating agencies of the government).

Moreover, psychologist-patient and doctor-patient communications are privileged in Nevada. NRS 49.207-.213 (psychologist and patient); NRS 49.215-.245 (doctor and patient). As Langford points to no evidence that the privilege was waived by H.H., we conclude that

neither Langford nor the State was automatically entitled to confidential records in the possession of a non-governmental third party. *See* NRS 174.235(2)(b) (indicating that a "defendant is not entitled . . . to the discovery or inspection of . . . [a] statement, report, book, paper, document, tangible object, or any other type of item or information that is privileged or protected from disclosure or inspection pursuant to the . . . laws of this state") Therefore, we hold the district court did not err in denying Langford's motion to compel H.H.'s psychiatric records.

*There was no Sixth Amendment violation*

Langford also argues the Sixth Amendment right to confront and cross-examine his accusers entitles him to H.H.'s psychiatric records as a source of cross-examination material. We disagree.

The Confrontation Clause is not "a constitutionally compelled rule of pretrial discovery." *Ritchie*, 480 U.S. at 52. Rather, "the right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." *Id.* Accordingly, we conclude that Langford's Sixth Amendment argument is without merit, as H.H. testified and was subject to cross-examination.

*The district court did not err in denying Langford's motions for mistrial because it immediately admonished the jury to disregard the witnesses' statements, which were inadvertent and not solicited by the State*

Langford argues he should have been granted a mistrial because "cumulative errors of inadmissible, prejudicial, irrelevant evidence came before the jury." Based on the following, we conclude that the district court did not abuse its discretion in denying Langford's motions for mistrial. *See Ledbetter v. State*, 122 Nev. 252, 264, 129 P.3d 671, 680 (2006) ("The decision to deny a motion for a mistrial rests within

the district court's discretion and will not be reversed on appeal absent a clear showing of abuse." (internal quotation marks omitted)).

First, Langford argues a mistrial was warranted because the picture of H.H. was more prejudicial than probative, and Leslie's "cute" comment made the danger of prejudice a reality. We conclude this argument is without merit. Leslie made the comment under her breath such that it was not even caught by the recorder. Furthermore, it is expected that a grandmother might show emotion for her granddaughter. Even if the jury heard Leslie's comment, such a show of emotion cannot be said to have influenced the jury in a manner that was prejudicial to Langford on this record.

Additionally, Langford maintains Shayleen's comment regarding "medication," Leslie's comments regarding "threats," and Christy's "broken arm" comment were prejudicial and amounted to bad act evidence. We conclude these arguments also are without merit. Primarily, with respect to testimony regarding "threats," the district court and the parties agreed that the voicemail did not constitute a bad act, and that further questioning of the witness was sufficient to clarify Leslie thought Langford's voice message was demanding but that he made no threats. Moreover, the district court timely admonished the jury to disregard the statements regarding medication and a broken arm, which were not solicited by the State. *See Carter v. State*, 121 Nev. 759, 770, 121 P.3d 592, 599 (2005) ("A witness's spontaneous or inadvertent references to inadmissible material, not solicited by the prosecution, can be cured by an immediate admonishment directing the jury to disregard the statement."). Therefore, the district court was within its discretion to

deny Langford's motions for mistrial, and Langford is not entitled to relief on this claim. Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

cc: Hon. Susan Johnson, District Judge
Law Office of Monique A. McNeill
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk