# IN THE SUPREME COURT OF THE STATE OF NEVADA

VALENTIN ANTHONY CORRALES,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 72795

FILED

DEC 04 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of ten counts of lewdness with a child under the age of fourteen, seventeen counts of sexual assault of a child under the age of fourteen, eight counts of sexual assault, and four counts of sexual assault of a child under the age of sixteen. Second Judicial District Court, Washoe County; Elliott A. Sattler, Judge.

Appellant Valentin Corrales sexually assaulted two of his biological daughters. During the State's case-in-chief, both daughters testified about the sexual abuse. The State also introduced prior bad act evidence that Corrales was a father figure to four other victims he previously sexually abused.

A jury found Corrales guilty of thirty-nine counts. On appeal, Corrales argues that (1) the district court erred by denying his *Batson* challenge, (2) the district court erred in admitting prior bad act evidence, (3) the district court erred by denying his motion to sever the counts involving his biological daughters, and (4) cumulative error warrants reversal.

18·906807

*The district court did not err in denying Corrales's Batson challenge*

During jury selection, the State exercised a peremptory strike to remove prospective Juror 26, a Hispanic male. Corrales made a *Batson* challenge to the peremptory strike, arguing that Juror 26 was unconstitutionally removed due to his race.

The district court must engage in a three-step analysis when analyzing a *Batson* challenge at trial. *See Batson v. Kentucky*, 476 U.S. 79, 93-98 (1986); *McCarty v. State*, 132 Nev. 218, 226, 371 P.3d 1002, 1007 (2016). "First, the opponent of the peremptory challenge must make out a prima facie case of discrimination." *McCarty*, 132 Nev. at 226, 371 P.3d at 1007 (internal quotation marks omitted). Second, if a preliminary showing has been made, the proponent of the peremptory strike must assert a neutral explanation for the strike. *Id.* Finally, the trial court should evaluate the persuasiveness of the neutral explanation and ultimately determine if the opponent of the peremptory strike has proven purposeful discrimination. *See id.* The trial court must "clearly spell out the three-step analysis when deciding a *Batson* . . . issue." *Libby v. State*, 115 Nev. 45, 54, 975 P.2d 833, 839 (1999). "We review the district court's ruling on the issue of discriminatory intent for clear error." *McCarty*, 132 Nev. at 226, 371 P.3d at 1007.

Here, we need not address the first step of the *Batson* three-step analysis because the State offered a race-neutral explanation for its peremptory strike and the trial court ultimately ruled on whether Corrales had proven purposeful discrimination. *See Hernandez v. New York*, 500 U.S. 352, 359 (1991) ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue

Supreme Court
OF
Nevada

(O) 1947A

of whether the defendant had made a prima facie showing becomes moot."). Thus, the second and third step of the *Batson* three-step analysis are at issue.

*Race-neutral explanation*

In determining whether the State has offered a race-neutral explanation for the use of the peremptory strike, the prosecutor's explanation only needs to be race-neutral; it does not need to "be persuasive or even plausible." *Ford v. State*, 122 Nev. 398, 403, 132 P.3d 574, 577-78 (2006).

In this case, the State explained that it struck Juror 26 because it "noticed he was having some attention difficulties." Additionally, the State stated that Juror 26 was "a man with no wife and no kids. Obviously this case involves allegations against [Corrales's] biological children. And for that reason we are looking for more jurors with relationship statuses and parental statuses that are consistent with the family in this case." Each of these is a race-neutral explanation for the State's exercise of its peremptory challenge and, as a result, this is the end of inquiry at step two. *See Purkett v. Elem*, 514 U.S. 765, 768 (1995) ("It is not until the *third* step that the persuasiveness of the justification becomes relevant . . . .").

*Purposeful discrimination*

In determining whether the opponent of the peremptory strike has proven purposeful discrimination, "[t]he district court must undertake a sensitive inquiry into such circumstantial and direct evidence of intent as may be available . . . before . . . dismissing the challenged juror." *Conner v. State*, 130 Nev. 457, 465, 327 P.3d 503, 509 (2014) (internal quotation marks omitted). "This sensitive inquiry certainly includes giving the defendant an opportunity to traverse an ostensibly race-neutral explanation for a

peremptory challenge as pretextual." *Id.* (internal quotation marks omitted). Considerations relevant to the third step include:

> (1) the similarity of answers to voir dire questions given by jurors who were struck by the prosecutor and answers by those jurors of another race or ethnicity who remained in the venire, (2) the disparate questioning by the prosecutors of struck jurors and those jurors of another race or ethnicity who remained in the venire, (3) the prosecutors' use of the jury shuffle, and (4) evidence of historical discrimination against minorities in jury selection by the district attorney's office.

*McCarty*, 132 Nev. at 226-27, 371 P.3d at 1007-08 (internal quotation marks omitted). "An implausible or fantastic justification by the State may, and probably will, be found to be pretext for intentional discrimination." *Id.* at 227, 371 P.3d at 1008 (internal quotation marks omitted). "The district court should sustain the *Batson* objection and deny the peremptory challenge if it is 'more likely than not that the challenge was improperly motivated.'" *Id.* (quoting *Johnson v. California*, 545 U.S. 162, 170 (2005)).

Here, Corrales argues that the district court failed to make a sensitive inquiry into the State's intent. After the State provided its race-neutral reasons for excluding Juror 26, the district court spelled out the third step of the *Batson* challenge, citing to Conner, and acknowledged that it must make a sensitive inquiry required by step three. The district court stated that it did not observe the inattentiveness or tiredness of Juror 26. However, the district court noted that it did not hear anything that would traverse the State's explanation from Corrales. In addition, the district court stated that there was some concern about Juror 26's ability to stay awake and focus during the course of the trial. The district court then asked the State whether the comprised jury contained any jurors that were Hispanic with no children and unmarried, and the State stated that there

 

was not. The district court ultimately found the State's race-neutral explanation persuasive and that Corrales did not prove purposeful discrimination.

From the record in this appeal, we conclude that the district court's denial of Corrales's *Batson* challenge was not clearly erroneous. Because this case involved sexual abuse of Corrales's biological daughters, the State's offered reasoning was plausible, and nothing in the record suggests that the State's asserted explanations were unequally applied to the challenged prospective jurors. Indeed, the State used peremptory challenges to strike two other prospective jurors that did not have children or a spouse. Ultimately, the jury was comprised of people that either had children, a spouse, or children and a spouse.

*The district court did not err in admitting prior bad act evidence*

Corrales argues that the district court erred in permitting the State to admit evidence of prior acts of sexual abuse committed by him upon four other victims. He contends that the probative value of this evidence is substantially outweighed by the danger of unfair prejudice. The State argues that the district court did not err in admitting the prior act evidence to show motive. We concur with the State.

"A district court's decision to admit or exclude evidence under NRS 48.045(2) rests within its sound discretion and will not be reversed on appeal absent manifest error." *Ledbetter v. State*, 122 Nev. 252, 259, 129 P.3d 671, 676 (2006).

NRS 48.045(2)[1] provides:

---

[1]The Legislature amended NRS 48.045, effective October 1, 2015, to include a sexual offense exception. *See* 2015 Nev. Stat., ch. 399, § 21(3), at 2243 ("Nothing in this section shall be construed to prohibit the admission

 

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

"A presumption of inadmissibility attaches to all prior bad act evidence." *Ledbetter*, 122 Nev. at 259, 129 P.3d at 677 (internal quotation marks omitted). Prior to the admission of evidence of prior bad acts, the prosecutor has the burden of establishing at a hearing outside the jury's presence: "(1) that the evidence is relevant to the crime charged; (2) that the other act is proven by clear and convincing evidence; and (3) that the probative value of the other act is not substantially outweighed by the danger of unfair prejudice." *Qualls v. State*, 114 Nev. 900, 902, 961 P.2d 765, 766 (1998).

Here, the district court conducted a hearing pursuant to *Petrocelli v. State*, 101 Nev. 46, 692 P.2d 503 (1985), prior to trial and determined that (1) the evidence was relevant as proof of Corrales's motive to commit the charged offense, (2) the State had proven the other acts by clear and convincing evidence, and (3) the prejudicial effect of the other act evidence does not outweigh its probative value. We conclude that the district court did not commit manifest error in admitting the evidence of Corrales's prior sexual misconduct with four other minors.

---

of evidence in a criminal prosecution for a sexual offense that a person committed another crime, wrong or act that constitutes a separate sexual offense."). Because the initial indictment in this case was filed in September 2015, we cite to the earlier version of the statute.

*The district court did not abuse its discretion by denying Corrales's motion to sever*

Corrales argues that the district court failed to adequately consider whether there was a statutory basis for joinder of the counts involving his biological daughters and failed to address whether joinder of those counts would be prejudicial. The State argues that because the evidence would have been cross-admissible at separate trials, the district court did not abuse its discretion in denying Corrales's motion to sever. Because we conclude that there was a proper basis for joinder and joinder did not unfairly prejudice Corrales, the district court did not abuse its discretion by denying Corrales's motion to sever.

The district court's decision to join or sever offenses is reviewed for an abuse of discretion. *Weber v. State*, 121 Nev. 554, 570, 119 P.3d 107, 119 (2005), *rejected on other grounds by Farmer v. State*, 133 Nev., Adv. Op. 86, 405 P.3d 114, 120 (2017). The district court abuses its discretion in failing to sever offenses if there was not a proper basis for joinder, or if unfair prejudice mandated separate trials. *Rimer v. State*, 131 Nev. 307, 320, 351 P.3d 697, 707 (2015). "We base our review on the facts as they appeared at the time of the district court's decision." *Id.*

*Basis for joinder*

Pursuant to NRS 173.115, separate offenses may be joined if they are (1) "[b]ased on the same act or transaction" or (2) "[b]ased on two or more acts or transactions connected together or constituting parts of a common scheme or plan." "'[C]ommon scheme' describes crimes that share features idiosyncratic in character." *Farmer v. State*, 133 Nev., Adv. Op. 86, 405 P.3d 114, 120 (2017) (internal quotation marks omitted).

In "determining whether a common scheme exists, courts ask whether the offenses share such a concurrence of common features as to

SUPREME COURT
OF
NEVADA

(O) 1947A

7

support the inference that they were committed pursuant to a common design." *Id.* at 121. Relevant factors include: "(1) degree of similarity of offenses, (2) degree of similarity of victims, (3) temporal proximity, (4) physical proximity, (5) number of victims, and (6) other context-specific features." *Id.* (citations omitted). No single factor is decisive, "and each may be assessed different weight depending on the circumstances." *Id.*

Here, Corrales's offenses were parts of a common scheme. The victims were Corrales's biological daughters separated by three years in age. Based on his daughters' testimony, they were subjected to similar types of abuse, which occurred simultaneously over a period of time. Their abuse started in a similar fashion and occurred in the same or similar locations. Accordingly, we conclude that there was a proper basis for joinder.

*Unfair prejudice*

Even if there is a basis for joinder, NRS 174.165(1) provides for relief from joinder where joinder would unfairly prejudice the defendant:

> If it appears that a defendant or the State of Nevada is prejudiced by a joinder of offenses or of defendants in an indictment or information, or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

*See Rimer*, 131 Nev. at 323, 351 P.3d at 709. ("Even when charges have been properly joined, some form of relief may be necessary to avert unfair prejudice to the defendant."). Unfair prejudice is a high standard and "requires more than a mere showing that severance may improve his or her chances for acquittal." *Id.*

Although Corrales argues that joinder of counts involving his biological daughters prejudicially infected his trial with improper

SUPREME COURT
OF
NEVADA

(O) 1947A

8

propensity and character evidence, he cannot be prejudiced by joinder of those counts when they would be cross-admissible in separate trials under NRS 48.035(3). *See United States v. Tyndall*, 263 F.3d 848, 850 (8th Cir. 2001) ("When evidence of one crime is admissible in the trial of another crime, however, there is no prejudice in trying the two charges at the same time.") Therefore, we conclude that joinder of the counts involving his biological daughters was not manifestly prejudicial and the district court did not abuse its discretion by denying Corrales's motion to sever.

Based on the foregoing, we

ORDER the judgment of conviction AFFIRMED.[2]

_____, J.
Pickering

_____, J.
Gibbons

_____, J.
Hardesty

cc:    Hon. Elliott A. Sattler, District Judge
       Washoe County Public Defender
       Attorney General/Carson City
       Washoe County District Attorney
       Washoe District Court Clerk

---

[2]Consequently, we reject Corrales's argument that cumulative error warrants reversal of his conviction because no errors occurred in this case. *See United States v. Sager*, 227 F.3d 1138, 1149 (9th Cir. 2000) (holding that cumulative error requires a showing of more than one error).